# FEDERAL TRADE COMMISSION ET AL. v. STANDARD OIL COMPANY OF CALIFORNIA

No. 79–900.   Argued October 15, 1980—Decided December 15, 1980

Powell, J., delivered the opinion of the Court, in which Burger, C. J., and Brennan, White, Marshall, Blackmun, and Rehnquist, JJ., joined. Stevens, J., filed an opinion concurring in the judgment, *post*, p. 247. Stewart, J., took no part in the consideration or decision of the case.

*Solicitor General McCree* argued the cause for petitioners. With him on the briefs were *Deputy Solicitor General Wallace, Elliot Schulder, Michael N. Sohn, Howard E. Shapiro, Joanne L. Levine,* and *Mark W. Haase.*

*George A. Sears* argued the cause for respondent. With him on the brief were *Richard W. Odgers* and *C. Douglas Floyd.**

Justice Powell delivered the opinion of the Court.

This case presents the question whether the issuance of a complaint by the Federal Trade Commission is "final agency action" subject to judicial review before administrative adjudication concludes.

---

*Daniel J. Popeo* and *Paul D. Kamenar* filed a brief for the Washington Legal Foundation as *amicus curiae* urging affirmance.

I

On July 18, 1973, the Federal Trade Commission issued and served upon eight major oil companies, including Standard Oil Company of California (Socal),[1] a complaint averring that the Commission had "reason to believe" that the companies were violating § 5 of the Federal Trade Commission Act, 38 Stat. 719, as amended, 15 U. S. C. § 45,[2] and stating the Commission's charges in that respect.[3]   The Commission issued the complaint under authority of § 5 (b) of the Act, 15 U. S. C. § 45 (b), which provides:

"Whenever the Commission shall have reason to believe that any . . . person, partnership, or corporation has been or is using any unfair method of competition or unfair or deceptive act or practice in or affecting commerce, and if it shall appear to the Commission that a proceeding by it in respect thereof would be to the interest of the public it shall issue and serve upon such person, partnership, or corporation a complaint stating its charges in that respect and containing a notice of a hearing . . . ."

An adjudication of the complaint's charges began soon there-

---

[1] The other seven respondents to the complaint were Exxon Corp., Texaco, Inc., Gulf Oil Corp., Mobil Oil Corp., Standard Oil Co. (Indiana), Shell Oil Corp., and Atlantic Richfield Co.   *In re Exxon Corporation, et al.,* Docket No. 8934.

[2] Section 5 of the Act, as set forth in 15 U. S. C. § 45, provides in pertinent part:

"(a) . . . (1) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

[3] The Commission charged that the eight companies had "maintained and reinforced a noncompetitive market structure in the refining of crude oil into petroleum products," had "exercised monopoly power in the refining of petroleum products," and had followed "common courses of action in accommodating the needs and goals of each other throughout the petroleum industry."

after before an Administrative Law Judge, and is still pending.

On May 1, 1975, Socal filed a complaint against the Commission in the District Court for the Northern District of California, alleging that the Commission had issued its complaint without having "reason to believe" that Socal was violating the Act.[4] Socal sought an order declaring that the issuance of the complaint was unlawful and requiring that the complaint be withdrawn. Socal had sought this relief from the Commission and been denied.[5] In support of its allegation and request, Socal recited a series of events that preceded the issuance of the complaint and several events that followed. In Socal's estimation, the only inference to be drawn from these events was that the Commission lacked sufficient evidence when it issued the complaint to warrant a belief that Socal was violating the Act.

The gist of Socal's recitation of events preceding the issuance of the complaint is that political pressure for a public explanation of the gasoline shortages of 1973 forced the Commission to issue a complaint against the major oil companies despite insufficient investigation. The series of events began on May 31, 1973. As of that day, the Commission had not

---

[4] Socal invoked federal-court jurisdiction under 5 U. S. C. § 704 and 28 U. S. C. §§ 1331, 1337, 1346, 1361, and 2201.

[5] The Commission had denied Socal's motion to dismiss the complaint on February 12, 1974. The Commission also had denied Socal's motion for reconsideration, stating:

"[I]t has long been settled that the adequacy of the Commission's 'reason to believe' a violation of law has occurred and its belief that a proceeding to stop it would be in the 'public interest' are matters that go to the mental processes of the Commissioners and will not be reviewed by the courts. Once the Commission has resolved these questions and issued a complaint, the issue to be litigated is not the adequacy of the Commission's pre-complaint information or the diligence of its study of the material in question but whether the alleged violation has in fact occurred. That is the posture of the instant matter." *In re Exxon Corp.*, 83 F. T. C. 1759, 1760 (1974).

examined any employees, documents, or books of Socal's, although the Commission had announced in December 1971, that it intended to investigate possible violations of the Federal Trade Commission Act in the petroleum industry.

On May 31, Senator Henry M. Jackson, then Chairman of the Senate Interior and Insular Affairs Committee and of the Permanent Investigation Subcommittee of the Senate Committee of Government Operations, requested the Commission "to prepare a report within thirty days regarding the relationship between the structure of the petroleum industry and related industries and the current and prospective shortages of petroleum products." Immediately the Commission subpoenaed three Socal officers to testify before it, and they did so in late June. This examination was the Commission's only inquiry as to Socal's books and records, and the only interview of a Socal officer, prior to the issuance of the complaint.[6] On July 6, the Commission sent to Senator Jackson a "Preliminary Federal Trade Commission Staff Report on Its Investigation of the Petroleum Industry," requesting that the report not be made public because it had not yet "been evaluated or approved by the Commission." On July 9, Senator Jackson informed the Commission by letter that he intended to publish the report as a congressional committee reprint unless the Commission explained by July 13 why public release of the report would be improper. The Commission responded on July 11 that public release of the report, which the Commission characterized as "an internal staff memorandum," would be "inconsistent with [the Commission's] duty to proceed judiciously and responsibly in determining what, if any, action should be taken on the basis of the staff investigation." On July 13, Senator Jackson released the report for publica-

---

[6] On July 6, 1973, the Commission subpoenaed certain of Socal's books and records, but the complaint was issued before those records were produced. The subpoena was quashed on July 27, 1973, by the commencement of adjudication.

tion by the Senate Committee on Interior and Insular Affairs. On July 18, the Commission issued its complaint.

The subsequent events recited by Socal in its complaint were intended to confirm that the Commission lacked sufficient evidence before issuing its complaint to determine that it had reason to believe that Socal was violating the Act. One subsequent event was the issuance on August 27 of a report by the Office of Energy Advisor of the Department of the Treasury, concluding that the Commission's staff report was wrong in implying that the major oil companies had contrived the gasoline shortages. The report recommended that the complaint be withdrawn. A second event was Senator Jackson's statement in January 1974, at the conclusion of congressional hearings about the shortages, that he had found no "hard evidence" that the oil companies had created shortages. In addition to these expressions of doubt about the allegations of the Commission's complaint, Socal recounted the several failures of the Commission's complaint counsel in the adjudication to comply with orders of the Administrative Law Judge to identify the witnesses and documents on which the Commission intended to rely. The complaint counsel admitted that most of the evidence and witnesses the Commission hoped to introduce were yet to be secured through discovery, and he moved to relax the Commission's procedural rules for adjudication in order to allow such extensive discovery. In certifying this motion to the Commission, the Administrative Law Judge recommended "withdrawal of this case from adjudication—that is, dismissal without prejudice—so that it may be more fully investigated." The Commission denied the complaint counsel's motion and declined to follow the Administrative Law Judge's recommendations.

The District Court dismissed Socal's complaint on the ground that "a review of preliminary decisions made by administrative agencies, except under most unusual circumstances, would be productive of nothing more than chaos." The Court of Appeals for the Ninth Circuit reversed. 596

F. 2d 1381 (1979). It held the Commission's determination whether evidence before it provided the requisite reason to believe is "committed to agency discretion" and therefore is unreviewable according to § 10 of the Administrative Procedure Act (APA), 5 U. S. C. § 701 (a)(2). The Court of Appeals held, however, that the District Court could inquire whether the Commission *in fact* had made the determination that it had reason to believe that Socal was violating the Act. If the District Court were to find upon remand that the Commission had issued the complaint "solely because of outside pressure or with complete absence of a 'reason to believe' determination," 596 F. 2d, at 1386, then it was to order the Commission to dismiss the complaint. The Court of Appeals further held that the issuance of the complaint was "final agency action" under § 10 (c) of the APA, 5 U. S. C. § 704.

We granted the Commission's petition for a writ of certiorari because of the importance of the questions raised by Socal's request for judicial review of the complaint before the conclusion of the adjudication. 445 U. S. 903 (1980). We now reverse.

II

The Commission averred in its complaint that it had reason to believe that Socal was violating the Act. That averment is subject to judicial review before the conclusion of administrative adjudication only if the issuance of the complaint was "final agency action" or otherwise was "directly reviewable" under § 10 (c) of the APA, 5 U. S. C. § 704. We conclude that the issuance of the complaint was neither.[7]

---

[7] In addition to contending that the issuance of the complaint is not "final" agency action, the Commission argues that the issuance is not "agency action" under § 2 (g) of the APA, 5 U. S. C. § 551 (13), and that, if agency action, it is "committed to agency discretion by law" under § 10. 5 U. S. C. § 701 (a)(2).

We agree with Socal and with the Court of Appeals that the issuance of the complaint is "agency action." The language of the APA and its legis-

## A

The Commission's issuance of its complaint was not "final agency action." The Court observed in *Abbott Laboratories* v. *Gardner,* 387 U. S. 136, 149 (1967), that "[t]he cases dealing with judicial review of administrative actions have interpreted the 'finality' element in a pragmatic way." In *Abbott Laboratories,* for example, the publication of certain regulations by the Commissioner of Food and Drugs was held to be final agency action subject to judicial review in an action for declaratory judgment brought prior to any Government action for enforcement. The regulations required manufacturers of prescription drugs to print certain information on drug labels and advertisements. The regulations were "definitive" statements of the Commission's position, *id.,* at 151, and had a "direct and immediate . . . effect on the day-to-day business" of the complaining parties. *Id.,* at 152. They had "the status of law" and "immediate compliance with their terms

---

lative history support this conclusion. According to § 10 of the APA, 5 U. S. C. § 701 (b) (2), "agency action" has the meaning given to it by § 2, 5 U. S. C. § 551. That section provides that " 'agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act," 5 U. S. C. § 551 (13), and also that " 'order' means the whole or a part of a final disposition . . . of an agency in a matter other than rule making . . . ." 5 U. S. C. § 551 (6). According to the legislative history of the APA:

"The term 'agency action' brings together previously defined terms in order to simplify the language of the judicial-review provisions of section 10 and to assure the complete coverage of every form of agency power, proceeding, action, or inaction. In that respect the term includes the supporting procedures, findings, conclusions, or statements or reasons or basis for the action or inaction." S. Doc. No. 248, 79th Cong., 2d Sess., 255 (1946).

We conclude that the issuance of the complaint by the Commission is "a part of a final disposition" and therefore is "agency action."

In view of our conclusion that the issuance of the complaint was not "*final* agency action," we do not address the question whether the issuance of a complaint is "committed to agency discretion by law." 5 U. S. C. § 701 (a) (2).

was expected." *Ibid.* In addition, the question presented by the challenge to the regulations was a "legal issue . . . fit for judicial resolution." *Id.*, at 153. Finally, because the parties seeking the declaratory judgment represented almost all the parties affected by the regulations, "a pre-enforcement challenge . . . [was] calculated to speed enforcement" of the relevant Act. *Id.*, at 154. Taking "a similarly flexible view of finality," *id.*, at 150, and in view of similar pragmatic considerations, the Court had held the issuance of administrative regulations to be "final agency action" in *Columbia Broadcasting System, Inc.* v. *United States,* 316 U. S. 407 (1942), *Frozen Food Express* v. *United States,* 351 U. S. 40 (1956), and *United States* v. *Storer Broadcasting Co.,* 351 U. S. 192 (1956).[8] The issuance of the complaint in this case, however, is materially different.

---

[8] In *Columbia Broadcasting System, Inc.* v. *United States,* the Court held reviewable a regulation of the Federal Communications Commission proscribing certain contractual arrangements between chain broadcasters and local stations. The Commission did not have authority to regulate such contracts; its regulation asserted only that the Commission would not license stations which maintained such contracts. In a challenge to the regulation before any enforcement action had been brought, the Court noted that the regulations had "the force of law before their sanctions are invoked as well as after," that they were "promulgated by order of the Commission," and that "the expected conformity to them causes injury cognizable by a court of equity." 316 U. S., at 418–419.

In *Frozen Food Express* v. *United States,* the Court held reviewable an order of the Interstate Commerce Commission specifying commodities that were deemed not to be "agricultural . . . commodities." The carriage of such commodities exempted vehicles from ICC supervision. The order was held to be "final agency action" in a challenge brought by a carrier transporting commodities that the ICC's order had not included in its terms.

In *United States* v. *Storer Broadcasting Co.,* the Court also held reviewable as "final agency action" a Federal Communications Commission regulation announcing a policy not to issue television licenses to applicants already owning five such licenses. The rulemaking was complete and "operate[d] to control the business affairs of Storer." 351 U. S., at 199.

By its terms, the Commission's averment of "reason to believe" that Socal was violating the Act is not a definitive statement of position. It represents a threshold determination that further inquiry is warranted and that a complaint should initiate proceedings. To be sure, the issuance of the complaint is definitive on the question whether the Commission avers reason to believe that the respondent to the complaint is violating the Act.[9] But the extent to which the respondent may challenge the complaint and its charges proves that the averment of reason to believe is not "definitive" in a comparable manner to the regulations in *Abbott Laboratories* and the cases it discussed.

Section 5 of the Act, 15 U. S. C. § 45 (b), in conjunction with Commission regulations, 16 CFR §§ 3.41–3.46 (1980), and § 5 of the APA, 5 U. S. C. § 554 (1976 ed. and Supp. III), requires that the complaint contain a notice of hearing at which the respondent may present evidence and testimony before an administrative law judge to refute the Commission's charges. Either party to the adjudication may appeal an adverse decision of the administrative law judge to the full Commission, 5 U. S. C. § 577; 16 CFR § 3.52 (1980); see 15 U. S. C. § 45 (c), which then may dismiss the complaint. See 15 U. S. C. § 45 (c). If instead the Commission enters an order requiring the respondent to cease and desist from engaging in the challenged practice, the respondent still is not bound by the Commission's decision until judicial review is complete or the opportunity to seek review has lapsed. 15 U. S. C. § 45 (g).[10] Thus, the averment of reason to believe is a prerequisite to a definitive agency position on the question whether Socal violated the Act, but itself is a determination only that adjudicatory proceedings will com-

---

[9] The Commission held as much in its order denying Socal's motion for reconsideration of the motion to dismiss. See n. 5, *supra*.

[10] Possible judicial review also includes review in this Court upon a writ of certiorari. 15 U. S. C. § 45 (g).

mence. Cf. *Ewing* v. *Mytinger & Casselberry, Inc.,* 339 U. S. 594 (1950); *Chicago & Southern Air Lines, Inc.* v. *Waterman S.S. Corp.,* 333 U. S. 103 (1948).

Serving only to initiate the proceedings, the issuance of the complaint averring reason to believe has no legal force comparable to that of the regulation at issue in *Abbott Laboratories,* nor any comparable effect upon Socal's daily business. The regulations in *Abbott Laboratories* forced manufacturers to "risk serious criminal and civil penalties" for noncompliance, 387 U. S., at 153, or "change all their labels, advertisements, and promotional materials; . . . destroy stocks of printed matter; and . . . invest heavily in new printing type and new supplies." *Id.,* at 152. Socal does not contend that the issuance of the complaint had any such legal or practical effect, except to impose upon Socal the burden of responding to the charges made against it. Although this burden certainly is substantial, it is different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action.

In contrast to the complaint's lack of legal or practical effect upon Socal, the effect of the judicial review sought by Socal is likely to be interference with the proper functioning of the agency and a burden for the courts. Judicial intervention into the agency process denies the agency an opportunity to correct its own mistakes and to apply its expertise. *Weinberger* v. *Salfi,* 422 U. S. 749, 765 (1975). Intervention also leads to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary. *McGee* v. *United States,* 402 U. S. 479, 484 (1971); *McKart* v. *United States,* 395 U. S. 185, 195 (1969). Furthermore, unlike the review in *Abbott Laboratories,* judicial review to determine whether the Commission decided that it had the requisite reason to believe would delay resolution of the ultimate question whether the Act was violated. Finally, every respondent to a Commission com-

plaint could make the claim that Socal had made. Judicial review of the averments in the Commission's complaints should not be a means of turning prosecutor into defendant before adjudication concludes.

In sum, the Commission's issuance of a complaint averring reason to believe that Socal was violating the Act is not a definitive ruling or regulation. It had no legal force or practical effect upon Socal's daily business other than the disruptions that accompany any major litigation. And immediate judicial review would serve neither efficiency nor enforcement of the Act. These pragmatic considerations counsel against the conclusion that the issuance of the complaint was "final agency action."

## B

Socal relies, however, upon different considerations than these in contending that the issuance of the complaint is "final agency action."

Socal first contends that it exhausted its administrative remedies by moving in the adjudicatory proceedings for dismissal of the complaint. By thus affording the Commission an opportunity to decide upon the matter, Socal contends that it has satisfied the interests underlying the doctrine of administrative exhaustion. *Weinberger* v. *Salfi, supra,* at 765. The Court of Appeals agreed. 596 F. 2d, at 1387. We think, however, that Socal and the Court of Appeals have mistaken exhaustion for finality. By requesting the Commission to withdraw its complaint and by awaiting the Commission's refusal to do so, Socal may well have exhausted its administrative remedy as to the averment of reason to believe. But the Commission's refusal to reconsider its issuance of the complaint does not render the complaint a "definitive" action. The Commission's refusal does not augment the complaint's legal force or practical effect upon Socal. Nor does the refusal diminish the concerns for efficiency and enforcement of the Act.

Socal also contends that it will be irreparably harmed unless the issuance of the complaint is judicially reviewed immediately. Socal argues that the expense and disruption of defending itself in protracted adjudicatory proceedings constitutes irreparable harm. As indicated above, we do not doubt that the burden of defending this proceeding will be substantial. But "the expense and annoyance of litigation is 'part of the social burden of living under government.'" *Petroleum Exploration, Inc.* v. *Public Service Comm'n*, 304 U. S. 209, 222 (1938). As we recently reiterated: "Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Board* v. *Bannercraft Clothing Co.*, 415 U. S. 1, 24 (1974).

Socal further contends that its challenge to the Commission's averment of reason to believe can never be reviewed unless it is reviewed before the Commission's adjudication concludes. As stated by the Court of Appeals, the alleged unlawfulness in the issuance of the complaint "is likely to become insulated from any review" if deferred until appellate review of a cease-and-desist order. 596 F. 2d, at 1387. Socal also suggests that the unlawfulness will be "insulated" because the reviewing court will lack an adequate record and it will address only the question whether substantial evidence supported the cease-and-desist order.[11]

We are not persuaded by this speculation. The Act ex-

---

[11] The Court of Appeals additionally suggested that the complaint would be "insulated" from review because the alleged unlawfulness would be moot if Socal prevailed in the adjudication. These concerns do not support a conclusion that the issuance of a complaint averring reason to believe is "final agency action." To the contrary, one of the principal reasons to await the termination of agency proceedings is "to obviate all occasion for judicial review." *Supra*, at 242; *McGee* v. *United States*, 402 U. S. 479, 484 (1971); *McKart* v. *United States*, 395 U. S. 185, 195 (1969). Thus, the possibility that Socal's challenge may be mooted in adjudication warrants the requirement that Socal pursue adjudication, not shortcut it.

pressly authorizes a court of appeals to order that the Commission take additional evidence.[12]   15 U. S. C. § 45 (c). Thus, a record which would be inadequate for review of alleged unlawfulness in the issuance of a complaint can be made adequate. We also note that the APA specifically provides that a "preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action," 5 U. S. C. § 704, and that the APA also empowers a court of appeals to "hold unlawful and set aside agency action . . . found to be . . . without observance of procedure required by law." 5 U. S. C. § 706. Thus, assuming that the issuance of the complaint is not "committed to agency discretion by law," [13] a court of appeals reviewing a cease-and-desist order has the power to review alleged unlawfulness in the issuance of a complaint. We need not decide what action a court of appeals should take if it finds a cease-and-desist order to be supported by substantial evidence but the complaint to have been issued without the requisite reason to believe. It suffices to hold that the possibility does not affect the application of the finality rule. Cf. *Macauley* v. *Waterman S.S. Corp.,* 327 U. S. 540, 545 (1946).

---

[12] Section 5 (c), as set forth in 15 U. S. C. § 45 (c), provides in pertinent part:

"If either party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the proceeding before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may see proper."

[13] Contrary to the suggestion of JUSTICE STEVENS in his concurring opinion, we do not hold that the issuance of the complaint is *reviewable* agency action. We leave open the question whether the issuance of the complaint is unreviewable because it is "committed to agency discretion by law." *See* n. 7, *supra.*

## C

There remains only Socal's contention that the claim of illegality in the issuance of the complaint is a "collateral" order subject to review under the doctrine of *Cohen* v. *Beneficial Loan Corp.,* 337 U. S. 541 (1949). It argues that the Commission's issuance of the complaint averring reason to believe "fall[s] in that small class [of decisions] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.,* at 546. In that diversity case, a District Court refused to apply a state statute requiring shareholders bringing a derivative suit to post a security bond for the defendant's litigation expenses. This Court held that the District Court's order was subject to immediate appellate review under 28 U. S. C. § 1291. Giving that section a "practical rather than a technical construction," the Court concluded that this order "did not make any step toward final disposition of the merits of the case and will not be merged in final judgment." 337 U. S., at 546.

*Cohen* does not avail Socal. What we have said above makes clear that the issuance of the complaint averring reason to believe is a step toward, and will merge in, the Commission's decision on the merits. Therefore, review of this preliminary step should abide review of the final order.

## III

Because the Commission's issuance of a complaint averring reason to believe that Socal has violated the Act is not "final agency action" under § 10 (c) of the APA, it is not judicially reviewable before administrative adjudication concludes.[14]

---

[14] By this holding, we do not encourage the issuance of complaints by the Commission without a conscientious compliance with the "reason to believe" obligation in 15 U. S. C. § 45 (b). The adjudicatory proceedings

We therefore reverse the Court of Appeals and remand for the dismissal of the complaint.

*It is so ordered.*

JUSTICE STEWART took no part in the consideration or decision of this case.

JUSTICE STEVENS, concurring in the judgment.

"Agency action" is a statutory term that identifies the conduct of executive and administrative agencies that Congress intended to be reviewable in federal court.[1]   In general, the term encompasses formal orders, rules, and interpretive decisions that crystallize or modify private legal rights.[2]   Agency action that is merely "preliminary, procedural, or intermediate" is subject to judicial review at the termination of the proceeding in which the interlocutory ruling is made.[3]   Today

---

which follow the issuance of a complaint may last for months or years. They result in substantial expense to the respondent and may divert management personnel from their administrative and productive duties to the corporation.   Without a well-grounded reason to believe that unlawful conduct has occurred, the Commission does not serve the public interest by subjecting business enterprises to these burdens.

[1] Title 5 U. S. C. § 702 provides in part:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

[2] Section 701 (b) (2) provides:

"For the purposes of this chapter—

. . . . .

"(2) 'person', 'rule', 'order', 'license', 'sanction', 'relief', and 'agency action' have the meanings given them by section 551 of this title."

Section 551 (13) provides:

" 'agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."

[3] Section 704 provides in part:

"A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."

the Court holds that an agency decision to initiate administrative proceedings is in the interlocutory category. In a footnote, *ante,* at 238–239, n. 7, the Court determines *whether* the decision is ever reviewable and in the body of the opinion the Court determines *when* it is reviewable.

In my opinion, Congress did not intend to authorize any judicial review of decisions to initiate administrative proceedings. The definition of "agency action" found in 5 U. S. C. § 551 (13) plainly contemplates action that affects legal rights in some way. As the Court points out, *ante,* at 242, the mere issuance of a complaint has no legal effect on the respondent's rights. Although an agency's decision to file a complaint may have a serious impact on private parties who must respond to such complaints, that impact is comparable to that caused by a private litigant's decision to file a lawsuit or a prosecutor's decision to present evidence to a grand jury. A decision to initiate proceedings does not have the same kind of effect on legal rights as "an agency rule, order, license [or other sanction]." [4] I am aware of nothing in the Administrative Procedure Act, or its history, that indicates that Congress intended to authorize judicial review of this type of decision.

---

[4] See n. 2, *supra.* The Court's partial quotation of the definition of the term "order" in 5 U. S. C. § 551 (6), see *ante,* at 239, n. 7, implies that the Court regards the initial step in a proceeding as a "part" of the final order terminating the proceeding. In my opinion that is a rather plain misreading of the definition. An ordinary reader would interpret "part" of an order to refer to one of several paragraphs or sections in that document, not to actions that preceded the entry of the order. Under a contrary reading, presumably the Commission's action in filing a brief directed to some preliminary issue in the proceeding would be considered "part" of the agency action terminating the proceedings and therefore subject to judicial review. Section 551 (6) reads, in full, as follows:

" 'order' means the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing."

The practical consequences of the Court's contrary holding—that the Commission's prelitigation decision, although not reviewable now, will be reviewable later [5]—confirms my opinion that the Court's decision does not reflect the intent of Congress. If the Commission ultimately prevails on the merits of its complaint, Socal surely will not be granted immunity because the Commission did not uncover the evidence of illegality until after the complaint was filed. On the other hand, if Socal prevails, there will be no occasion to review the contention that it now advances, because the only relief it seeks is a dismissal of the Commission's complaint. Socal is surely correct when it argues that unless review is available now, meaningful review can never be had.

The Court's casual reading of the Administrative Procedure Act is unfortunate for another reason. The disposition of a novel and important question of federal jurisdiction in a footnote will lend support to the notion that federal courts have a "carte blanche" authorizing judicial supervision of almost everything that the Executive Branch of Government may do. Because that notion has an inevitable impact on the quantity and quality of judicial service, federal judges should be especially careful to construe their own authority strictly. I therefore respectfully disagree with the Court's perfunctory analysis of the "agency action" issue. I do, however, concur in its judgment because I am persuaded that the Commission's decision to initiate a complaint is not "agency action" within the meaning of § 10 (b) of the Administrative Procedure Act, 5 U. S. C. § 702.

---

[5] Because judicial review of the Commission's decision is not specifically proscribed by statute, the decision to file a complaint will be reviewable later unless the Commission, by a showing of "clear and convincing" evidence, can overcome the strong presumption against a determination that its action was "committed to agency discretion" under 5 U. S. C. § 701 (a) (2). See *Dunlop* v. *Bachowski*, 421 U. S. 560, 567 (1975).