## CIBA–GEIGY CORPORATION, Plaintiff,

v.

## UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Defendant.

### Civ. A. No. 85–795.

United States District Court,
District of Columbia.

May 10, 1985.

Kenneth W. Weinstein, Washington, D.C., for plaintiff.

John Cermak, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

STANLEY S. HARRIS, District Judge.

This case is before the Court on cross-motions for summary judgment and the defendant's motion to dismiss. It being concluded that the defendant Environmental Protection Agency (EPA) has neither issued a final order directed to the plaintiff Ciba-Geigy nor taken any other final action which is reviewable by the Court, the complaint is dismissed for lack of subject matter jurisdiction.

■■■ Ciba-Geigy seeks a declaratory judgment and an injunction against future enforcement action by the EPA regarding the labeling of products containing the pesticide simazine. The complaint stems from a series of mailings which notified Ciba-Geigy that unless the labeling of its simazine products was revised such products would be considered misbranded as defined by section 2(q) of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136(q) (1980). Specifically, Ciba-Geigy protests the EPA's December 21, 1984, mailgram setting forth a ground water advisory statement to be placed on labels for simazine products entering the market after January 30, 1985.[1] Ciba-Geigy further was informed that products shipped after that date without the labeling changes would be viewed as misbranded and appropriate enforcement action would be considered. Ciba-Geigy argues that the EPA acted in violation of FIFRA by issuing the mailgram without an opportunity for a hearing.

---

1. The mailgram also stated that the prospective label was to show that simazine products were for restricted use only. By letter dated March 14, 1984 (three days after the complaint herein was filed), the EPA informed Ciba-Geigy that it had decided not to consider simazine products as classified for restricted use until after a cancellation or rulemaking process. Thereafter, Ciba-Geigy voluntarily dismissed its claim challenging the restricted use classification. That part of the complaint accordingly is no longer before the Court.

Under the standards set forth by the Supreme Court in *FTC v. Standard Oil Co.*, 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980), the mailgram may not be deemed final agency action and is itself devoid of legal effect. It properly may be considered as no more than the agency's interpretation of FIFRA's misbranding provisions. Section 2(q), 7 U.S.C. § 136(q). That is, it served as notice to the pesticide industry that a simazine product with labeling that does not adequately protect health and the environment could be subject to enforcement action. *See* §§ 2(q)(1)(F) and (G), 7 U.S.C. §§ 136(q)(1)(F), (G). It follows that non-conforming products would be in violation of the misbranding provisions, not of the mailgram.

An agency's decision is final if (1) it is definitive or there are no further agency procedures, (2) the action has legal force or great practical impact, and (3) judicial review would be efficient or would serve to enforce the regulatory scheme. *See Standard Oil*, 449 U.S. at 240–43, 101 S.Ct. at 493–95. The mailgram cannot meet the first standard because FIFRA provides an elaborate procedural scheme for agency enforcement action, which includes subsequent administrative and judicial review. If the EPA considers a product misbranded, further agency action may include enforcement through an administrative action for civil penalties, § 14(a)(1), 7 U.S.C. § 136*l*(a)(1), for criminal penalties, § 14(b), 7 U.S.C. § 136*l*(b), for the issuance of a "stop sale, use, or removal" order against Ciba-Geigy, § 13(a), 7 U.S.C. § 136k(a), or for condemnation and seizure, § 13(b), 7 U.S.C. § 136k(b). Any of these procedures would provide Ciba-Geigy an opportunity for a hearing on the validity of EPA's position and the merits of the misbranding determination. The mailgram, as an interpretation of the misbranding provisions, would trigger further agency procedures only should Ciba-Geigy choose not to comply with its message.

Similarly, the mailgram does not satisfy the second standard since it is the misbranding specifications and procedures for enforcement and review, not the mailgram, which have legal force and practical impact.

■ Finally, the elaborate procedural scheme described above suggests the inefficient and unduly interruptive result of any judicial intervention at this stage of the proceedings. In addition, FIFRA specifically designates the appropriate reviewing court for each type of enforcement action. For example, actions for civil penalties are reviewable by the court of appeals, § 14(a)(3), 7 U.S.C. § 136*l*(a)(3); § 16(b), 7 U.S.C. § 136n(b). Other enforcement actions are reviewable by the district court, § 16(a), 7 U.S.C. § 136n(a). Where a statute commits review of agency action to the court of appeals, any suit seeking relief that might affect the circuit court's future jurisdiction is subject to the exclusive review of the court of appeals. *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C.Cir.1984). In that the mailgram cannot be deemed enforcement action by itself, this Court cannot make a determination as to the appropriate jurisdiction of this agency action unless Ciba-Geigy chooses to disregard the labeling instructions and the EPA exercises its enforcement options under FIFRA's provisions. Only then could the court of appropriate jurisdiction be ascertained.

Consistent with such reasoning and upon consideration of the defendant's motion to dismiss, the plaintiff's opposition thereto, the reply, and the arguments heard thereon, it hereby is

ORDERED, that the motion is granted and the complaint is dismissed.

SO ORDERED.