**SOUTHEASTERN FISHERIES ASSOCI- ATION, INC., and National Fisheries, Plaintiffs,**

v.

**Robert A. MOSBACHER, Anthony J. Calio, and William G. Gordon, Defendants,**

**Coastal Conservation, Department of Natural Resources (Florida), National Marine Fisheries, State of Florida, State of Louisiana, and State of Texas, Intervenors.**

**Civ. A. No. 86–1948 SSH.**

United States District Court, District of Columbia.

July 31, 1990.

Eldon V.C. Greenberg, Washington, D.C., for plaintiffs.

Michelle Kuruc, Dept. of Justice, Washington, D.C., for defendants.

Jay Johnson, Asst. Gen. Counsel for Fisheries, Washington, D.C., for defendant William G. Gordon.

Robert George Hayes, Jeffrey Russell Masi, Washington, D.C., for Coastal Conservation.

Charles R. McCoy, Dept. of Natural Resources, Tallahassee, Fla., for Dept. of Natural Resources.

James W. Sloan, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for Fla./Natural Resources, State of Fla.

Graig O'Connor, Gen. Counsel, St. Petersburg, Fla., for Nat. Marine Fisheries.

Charles L. Patin, Dept. of Justice, Civ. Div., Baton Rouge, La., for State of La.

John R. Carter, Asst. Atty. Gen., Environmental Protection Div., Austin, Tex., for State of Tex.

## OPINION

STANLEY S. HARRIS, District Judge.

In September 1987, plaintiffs filed an amended complaint challenging certain provisions of the Secretarial Fishery Management Plan for the Red Drum Fishery of the Gulf of Mexico, and its implementing regulations. Plaintiffs allege that defendants' regulations of these federal waters known as the Exclusive Economic Zone (EEZ) violate the Magnuson Fishery Conservation and Management Act, 16 U.S.C. § 1801 *et seq.* (1988) (Magnuson Act), and the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* (1988) (APA).[1] Defendants have moved to dismiss Count I of plaintiffs' amended complaint for lack of ripeness.[2] Count I alleges that defendants' regulations allow states, in violation of the Magnuson Act, the APA, and the Supremacy Clause, to regulate the landing, possession, and sale of redfish taken in (1) the indirect finfish fishery in the EEZ, and (2) the directed redfish fishery in the EEZ.[3] Upon

1. The EEZ is an area whose inner boundary is a line coterminous with the seaward boundary of each of the coastal states, and whose outer boundary is a line 200 nautical miles from the line whose territorial sea is measured. 16 U.S.C. § 1802(6) (1988).

2. Intervenor-defendants Coastal Conservation Association and State of Florida have joined in defendants' motion.

3. In Count I, plaintiffs further allege that defendants violate the Magnuson Act by allowing states to regulate vessels not registered in such a

consideration of defendants' motion, plaintiffs' opposition thereto, and the entire record herein, defendants' motion is granted as to the directed redfish fishery and denied as to the indirect finfish industry.

## BACKGROUND

This lawsuit commenced in July 1986 as a challenge to defendants' emergency regulations of the EEZ.[4] Defendants promulgated these emergency regulations in response to a crisis in the red drum fishery in federal waters in the Gulf of Mexico, caused in part by the surge in popularity of blackened redfish. Defendants issued permanent regulations in the form of a Fishery Management Plan (FMP) in December 1986,[5] and then further amended the FMP in May 1987 (Amended FMP).[6] The Amended FMP prohibits a directed commercial red drum fishery in the EEZ and limits the red drum harvest in the indirect finfish fishery to 100,000 pounds.[7] However, unlike the FMP, the Amended FMP did not expressly supersede state landing, possession, and sale laws, and plaintiffs challenge this failure to supersede state laws in Count I of their amended complaint. They argue that such failure results in eliminating all redfish catch in the EEZ since plaintiffs operate boats with purse seine nets, and four of five Gulf Coast States ban the landing, possession, or sale of redfish caught with purse seine gear in the EEZ. Thus, according to plaintiffs, any harvest permitted in the EEZ cannot be landed, sold, or possessed throughout much of the Gulf of Mexico. Plaintiffs allege that these state laws are inconsistent with the Amended FMP, and

that the Magnuson Act requires defendants to preclude conflicting state law when they regulate fishing in the EEZ.[8]

## DISCUSSION

· In their motion to partially dismiss, defendants argue that Count I is not ripe for review because (1) there is no directed commercial red drum fishing in the EEZ, and (2) there is not yet a federal regulation controlling the landing, sale, and possession of red drum taken from the EEZ. Thus, defendants argue they have not made a final decision as to whether to supersede state law. Plaintiffs argue that Count I is ripe for review because (1) the legal question of supersession is fit for review, and (2) plaintiffs suffer hardships from the denial of judicial review.

### A. *The Indirect Finfish Fishery*

■ In their motion to dismiss Count I, defendants do not address the ripeness issue with regard to supersession of state laws directed at the indirect finfish fishery. Plaintiffs argue that the portion of Count I dealing with the indirect finfish fishery is ripe, because such fishing is currently affected by the Amended FMP. Plaintiffs need not make further argument, because defendants concede in their reply that the supersession issue is ripe with respect to regulations in the incidental fishery. Defendants admit that there is currently a federal regulation applying state landing and possession laws in the incidental fishery, and that such final agency action renders that portion of plaintiffs' claim ripe

state. Defendants do not challenge this portion of Count I in their motion to partially dismiss.

**4.** Published in June of 1986, these emergency regulations established a quota of one million pounds for the directed commercial harvest of redfish in the EEZ.

**5.** The FMP measures provided for supersession of conflicting state law with regard to the directed redfish fishery and indirect finfish fishery.

**6.** The Magnuson Act requires the Secretary of Commerce to promulgate regulations imple-

menting fishery management plans or amendments. 16 U.S.C. § 1855(c) (1988). The regulations found at 50 C.F.R. § 653 implement the Amended FMP.

**7.** A directed commercial red drum fishery refers to "any commercial fishing activity in which the weight of red drum landed exceeds five percent of the total weight of all other fish on board." 50 C.F.R. § 653.2 (1988).

**8.** The parties address the merits of this contention in their cross-motions for summary judgment.

for review.[9] Accordingly, the Court denies defendants' motion to dismiss any portion of Count I that addresses the indirect finfish fishery.

### B. *The Directed Redfish Fishery*

In this portion of Count I, plaintiffs allege that defendants violated the Magnuson Act, the APA, and the Supremacy Clause by failing to supersede state landing, selling, and possession laws for redfish caught in the directed redfish fishery in the EEZ. This claim, however, is not ripe for review.

Defendants challenge Count I's ripeness on three grounds: first, defendants argue that there is no final agency action on the issue of state supersession with regard to the directed redfish fishery; second, they argue that the supersession issue is bound up with the factual matter of whether the directed redfish fishery will eventually reopen; and third, they argue that plaintiffs do not suffer hardship from denial of review because the directed redfish fishery is currently closed, and plaintiffs may file a complaint if and when defendants decide to reopen the directed redfish fishery.

Plaintiffs raise two arguments in opposition to defendants' position: first, they argue that the issue of supersession is a purely legal question fit for review; and second, they argue that the hardships they suffer favor early review.

■■■ The resolution of a ripeness question requires the application of the two-prong test set forth in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The Court must consider both the fitness of the issues for judicial determination and the hardship to the parties in withholding review. *Id.* at 149, 87 S.Ct. at 1515–16. This inquiry prevents premature adjudication and judicial entanglement in administrative affairs, and further protects agencies from judicial in-terference prior to formalized action. *Id.* at 148, 87 S.Ct. at 1515.

### 1. Fitness of the Issues

■■■ The fitness inquiry includes several factors, including whether the issues for judicial resolution present purely legal questions, whether the issues would benefit from further factual development, and whether the agency's action is sufficiently final. *Ciba–Geigy Corp. v. United States Environmental Protection Agency*, 801 F.2d 430, 435 (D.C.Cir.1986).

Plaintiffs' characterization of Count I as raising purely legal issues overlooks the factual component of the supersession issue. Plaintiffs argue that the decision to supersede state law turns solely on whether those laws are inconsistent with federal aims. Even assuming that this is correct, defendants' decision to close the directed redfish fishery in the EEZ does not pose any issue of inconsistent state laws. The decision wholly precludes any possibility of inconsistency. That is, state laws concerning the landing, selling, or possession of redfish have no effect in light of defendants' complete prohibition of redfish catch in the directed redfish fishery in the EEZ.

Judicial appraisal should be deferred if it is likely to be on much surer footing in the context of a specific application of the regulation. *Toilet Goods Assoc. v. Gardner*, 387 U.S. 158, 164, 87 S.Ct. 1520, 1524–25, 18 L.Ed.2d 697 (1967). Defendants have the option to reopen the directed redfish fishery in the EEZ if certain developments occur in the redfish populations. If such a decision is made, inconsistent state laws could affect redfish catch, and the supersession issue would become viable. The decision to reopen rests on factual developments, and the legal components of the supersession issue are bound up with these factual developments. This Court cannot speculate as to whether defendants will ever reopen the redfish fishery and cannot resolve the supersession issue until then.

---

**9.** Defendants expressly allow state laws regarding the landing of redfish to govern redfish catch from the indirect finfish fishery. 50 C.F.R. § 653.3(d). Paragraph 46 of Count I contests the validity of this portion of defendants' regulation. Paragraph 46, then, presents a ripe claim as it deals with the indirect finfish fishery regulations which defendants concede are ripe for review.

Finally, an agency action which is not final is not fit for review. *See Abbott Laboratories*, 387 U.S. at 149, 87 S.Ct. at 1515–16. The finality requirement depends on whether an agency's position is "definitive" and whether it has a "direct and immediate ... effect on the day-to-day business" of a party seeking review. *FTC v. Standard Oil Co.*, 449 U.S. 232, 239, 101 S.Ct. 488, 493, 66 L.Ed.2d 416 (1980) (quoting *Abbott Laboratories*, 387 U.S. at 151–52, 87 S.Ct. at 1516–17).

As to the latter of these requirements, the Amended FMP's closure of the directed redfish fishery certainly affects plaintiffs, but the choice not to supersede state law has no effect. Because plaintiffs may no longer take redfish from the directed redfish fishery in the EEZ, state landing, possession, and sale laws have no effect.

Plaintiffs argue that defendants have established a definitive policy with regard to supersession. The Amended FMP itself is a final agency action. However, the Amended FMP is silent on the supersession issue, and defendants cannot be presumed to have embraced state laws and policies regarding the landing, possession, or sale of redfish. Instead, by deciding to completely ban redfish from the directed redfish fishery, defendants opted to not address these state laws. They have not committed themselves to a precise course of action as to supersession. If defendants do decide to reopen the directed redfish fishery, they may have to address state landing, possession, and sale laws, should those laws present a conflict. Until that time, this Court cannot speculate as to whether defendants will choose to supersede such state laws or not. To interfere at this point, when there has been no formalized action as to supersession, would surely present the judicial entanglement in administrative affairs that *Abbott Laboratories* condemns.

### 2. Hardship Inquiry

 The judicial and agency interests in deferring review do not end the ripeness inquiry. If plaintiffs demonstrate that sufficient hardship results from deferral, review is warranted. *Consolidated Coal Co. v. Federal Mine Safety and Health Review Comm'n*, 824 F.2d 1071, 1081 (D.C.Cir. 1987). Plaintiffs raise three arguments in attempting to show hardship: (1) they will be time-barred from reraising the supersession issue; (2) they suffer immediate and direct impact from defendants' failure to supersede; and (3) they wish to see state and federal conflicts put to rest.

Congress specifically provided that petitions for judicial review of regulations implementing fishery management plans or amendments must be filed within 30 days after promulgation. 16 U.S.C. § 1855(d) (1988). Plaintiffs interpret this provision as forever barring a complaint of supersession if it is not raised in response to the regulations implementing the Amended FMP. This interpretation is incorrect, for defendants provided that reopening the directed redfish fishery must be accomplished by a fishery management plan amendment. *See* 50 C.F.R. § 653.24(f) (1988). Such an amendment requires the Secretary of Commerce to promulgate regulations for implementation. 16 U.S.C. § 1855(c). These regulations in turn trigger the 30–day review period.[10] Thus, plaintiffs may reraise the supersession issue if and when defendants decide to reopen the directed redfish fishery in the EEZ, and they therefore suffer no hardship in this respect.

Plaintiffs next contend that defendants' failure to supersede state landing, possession, and sale laws has an adverse economic impact on plaintiffs. Specifically, plaintiffs point to loss of investment in new purse seine vessels, termination of plans to replace existing fleets, and diminished utility of a shipyard specifically designed for

---

**10.** Plaintiffs point out that in *National Food Processors Assoc. v. Klutznick*, 507 F.Supp. 76 (D.D.C.1981), this Court found that certain agency regulations did not constitute an actual amendment and thus did not retrigger the 30–day review period. However, those regulations simply incorporated past amendments for the sake of clarity. That is not the case here. The regulation found at 50 C.F.R. § 653.24(f) requires any alterations in the primary area (including the directed redfish fishery) to be made by a fishery management plan amendment.

purse seine vessel production. Plaintiffs do not explain, however, how these adversities would result from failure to supersede state laws. Instead, these hardships stem from defendants' decision to close the directed redfish fishery—a decision not at issue in Count I.

Plaintiffs' final allegation of hardship—to "put the question of state and federal relations in the EEZ to rest" does not suggest any particular hardship to plaintiffs. Moreover, with regard to redfish catch from the directed redfish fishery, there is no conflict between state and federal law, because federal law prohibits the redfish catch. Plaintiffs have not shown sufficient hardship to outweigh the judicial interest in preventing interference prior to formalized agency action.

### Conclusion

The Count I claim as to the directed redfish fishery presents an issue unfit for judicial review. Any hardship plaintiffs suffer in the deferral of review does not outweigh judicial and agency interests in avoiding premature review. Thus, that portion of Count I is not yet ripe for review. Accordingly, this Court hereby partially grants defendants' motion to dismiss Count I as it regards the directed redfish fishery. That portion of Count I which regards the indirect redfish fishery, as both parties concede, is ripe for review. Therefore, defendants' motion to dismiss that portion of Count I is denied.