TERRITORIAL COURT OF THE U.S. VIRGIN ISLANDS, Petitioner,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY; V.I. Department of Planning & Natural Resources, Respondents.

No. 01–3670.

Docket No. SDWA 02–2001–8135.

United States Court of Appeals, Third Circuit.

Argued June 25, 2002.

Decided Oct. 7, 2002.

Leon A. Kendall, (argued), General Counsel, Territorial Court of the V.I., P.O. St. Thomas, V.I., for Petitioner.

Thomas L. Sansonetti, Assistant Attorney General, Laurel A. Bedig, Timothy M. Connelly (argued), Environmental Defense Section, Environment & Natural Resources Division, United States Department of Justice, P.O. Washington, D.C., Douglas G. McKenna (argued), United States Environmental Protection Agency, Office of Regional Counsel, New York, NY, for Respondent.

Before ALITO, AMBRO, and GARTH, Circuit Judges.

OPINION OF THE COURT

PER CURIAM.

The Virgin Islands Territorial Court ("Territorial Court") petitions for review of an Environmental Protection Agency ("EPA") order requiring the Territorial Court to monitor its water system for the presence of nitrate. The central issue raised is the interpretation of the term "human consumption" in the Safe Drinking Water Act ("SDWA"), 42 U.S.C. §§ 300f–300j–36. We need not reach this issue

because we find that the EPA's order is not final, and we therefore lack jurisdiction over this appeal.

## I.

The Territorial Court maintains a cistern to collect water from of the roof of the courthouse building. The water supplies the courthouse's running water supply and is used in the restroom facilities; however, bottled water is provided for drinking purposes, and the Territorial Court has posted signs warning individuals not to drink the tap water. While the water is treated with chlorine, it is undisputed by the parties that the Territorial Court did not test the cistern water for nitrate. If the water is used for "human consumption," the Territorial Court operates a public water system, and its failure to monitor the water supply for nitrate brings the Territorial Court in violation of the federal SDWA, as well as the Virgin Islands Safe Drinking Water Act, 19 V.I.Code Ann. §§ 1301–1311.

On May 8, 2001, the Virgin Islands Department of Planning and Natural Resources ("DPNR"), served the Territorial Court with a "Notice of Violation, Order for Corrective Action, Notice of Penalty Assessment, and Opportunity to Request Hearing."[1] Appendix at 1–4. The Notice ordered the Territorial Court to monitor its water supply for nitrate and report the results to the DPNR by June 15, 2001, under the Virgin Islands Safe Drinking Water Act, which mirrors the federal SDWA. *Id.* at 2. The Notice set out a fine of $1,500 for the Territorial Court's two-year violation of monitoring requirements. *Id.* at 3. The Territorial Court responded to the Notice, vigorously asserting that it does not operate a public water system

within the meaning of the SDWA or the Virgin Islands Safe Drinking Water Act.

The DPNR referred its violation notice to the EPA to pursue enforcement. Appendix at 21–22. The EPA issued a "Final Administrative Order" on August 23, 2001. In its Order, the EPA found that the Territorial Court operates a public water system that supplies water regularly for human consumption to at least 25 individuals. *Id.* at 24–25. These findings and the Territorial Court's failure to test for nitrate and notify the public of its noncompliance with the SDWA brought the Territorial Court in violation of the SDWA. *Id.* at 26. The EPA directed the Territorial Court 1) to contract with a certified laboratory to sample and analyze the drinking water within ten days of the Order; 2) to monitor its water system for nitrates and report the results to the DPNR and the EPA within 45 days; 3) to report to the DPNR that it had failed to comply with a primary drinking water regulation; and 4) to notify the public that it had failed to comply with a primary drinking water regulation. *Id.* at 26.

The Territorial Court moved the EPA to stay its Order and filed the present Petition for Review of the EPA's Order under 42 U.S.C. § 300j–7(a)(2).

## II.

Under 42 U.S.C. § 300j–7(a)(2), this Court may review only a "final action" of the EPA. The EPA contends that this Court lacks jurisdiction over the Petition because it is not a final agency action and only provides notice to the Territorial Court that EPA views its water distribution to be in violation of the SDWA. We agree with the EPA that its Order is not "final" within the meaning of 42 U.S.C. § 300j–7(a)(2).

---

1. The DPNR administers the Virgin Islands' approved SDWA program, and therefore has       enforcement authority.

Two conditions must be satisfied for agency action to be final. First, the action "must mark the 'consummation' of the agency's decision-making process." *Bennett v. Spear*, 520 U.S. 154, 177, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) *quoting Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113, 68 S.Ct. 431, 92 L.Ed. 568 (1948). A tentative or interlocutory agency action is not sufficient to satisfy this requirement. *Id.* Second, the action "must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Id.* *quoting Port of Boston Marine Terminal Ass'n. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970).

We traditionally review the following factors in order to determine whether an agency action is "final":

1) whether the decision represents the agency's definitive position on the question; 2) whether the decision has the status of law with the expectation of immediate compliance; 3) whether the decision has immediate impact on the day-to-day operations of the party seeking review; 4) whether the decision involves a pure question of law that does not require further factual development; and 5) whether immediate judicial review would speed enforcement of the relevant act.

*Seidman v. Office of Thrift Supervision, Dep't of the Treasury*, 37 F.3d 911, 923 (3d Cir.1994) *citing CEC Energy Co. v. Public Serv. Comm.*, 891 F.2d 1107, 1110 (3d Cir. 1989).

First, the EPA's Order is a preliminary step that may lead to final action in the form of a penalty order if the EPA pursues enforcement. The Order has no legal effect on the Territorial Court and acts only to advise the Territorial Court of the EPA's position that it is in violation of the SDWA. Furthermore, the position of the EPA is subject to change in subsequent administrative proceedings. *See Federal Trade Comm'n v. Standard Oil Co.*, 449 U.S. 232, 241, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980) ("the extent to which the respondent may challenge the complaint and its charges prove that the averment ... is not 'definitive'") (citation omitted). The Order has no effect on the Territorial Court until the EPA decides to enforce it. In order to enforce its Order, the EPA has to conduct proceedings during which the validity of the Order and the EPA's position on the Territorial Court's violation of the SDWA would be at issue and subject to change. *See* 42 U.S.C. § 300g–3(g)(B) (penalties may be assessed after "notice and opportunity for a public hearing").

Second, the Order does not have the effect of law because it does not create an obligation or impose a penalty on the Territorial Court. *See Solar Turbines, Inc. v. Seif*, 879 F.2d 1073, 1081 (3d Cir.1989). The imposed obligations simply direct the Territorial Court to adhere to already existing obligations, as outlined in the Code of Federal Regulations and therefore create no new obligations. Additionally, the Order imposes no adverse legal consequences on the Territorial Court. The Order assesses no penalty or fine. While the Territorial Court may be assessed a penalty after a future administrative proceeding if it violates the Order, the Order standing alone does not impose any liability that the Territorial Court did not previously face for its potential violation of the statute. *See* 42 U.S.C. § 300g–3(b). In order to impose a monetary assessment, the EPA must first either conduct additional administrative proceedings or bring an action in district court. *See* 42 U.S.C. §§ 300g–3(b), (g)(3). The appropriate time for circuit court review is after the conclusion of either of these proceedings.

Third, we find that the Order has minimal impact on the daily operations of the

Territorial Court. This finding is emphasized by the fact that the Territorial Court already has started testing its water distribution system for nitrate at minimal cost.

Fourth, while this case presents the significant legal issue of the proper interpretation of "human consumption" in 42 U.S.C. § 300f(4)(A), we find that the issue's significance does not outweigh the previously discussed factors. Any speed of enforcement of the SDWA facilitated by pre-enforcement review is likewise outweighed by the previously discussed factors.

According, the appeal is dismissed for lack of jurisdiction under 42 U.S.C. § 300j–7(a)(2).[2]

2. Judge Ambro respectfully dissents, in that he believes that the factors by which we determine whether an agency action is final weigh in favor of finality under the facts of this case. He believes, *inter alia*, that the EPA has taken a definitive position that the Territorial Court is a public water system under the SDWA, that whether water used for washing hands qualifies as "human consumption" is a pure question of law, that the EPA's order has the status of law because it requires immediate compliance and carries penalties for noncompliance, and that preenforcement review will speed enforcement because administrative review will add nothing to the record to aid in the resolution of this dispute.