## COMMODITY FUTURES TRADING COMMISSION, Plaintiff–Appellee,

v.

## MONEX DEPOSIT COMPANY, Monex Credit Company, and Newport Service Corporation, Defendants–Appellants.

No. 15-1467

United States Court of Appeals, Seventh Circuit.

Argued September 16, 2015

Decided June 1, 2016

Carlin Ray Metzger, Robert A. Schwartz, Anne Stukes, Attorneys, Commodity Futures Trading Commission, Office of the General Counsel, Chicago, IL, for Plaintiff–Appellee.

Oscar L. Alcantara, Stephanie J. Harris, Attorneys, Goldberg Kohn Ltd., Chicago, IL, Benjamin C. Geiger, Neil A. Goteiner, Attorneys, Farella Braun & Martel, San Francisco, CA, for Defendants–Appellants.

Before POSNER, EASTERBROOK, and WILLIAMS, Circuit Judges.

EASTERBROOK, Circuit Judge.

The Commodity Futures Trading Commission regulates contracts concerning commodities for future delivery when offered on margin or another form of leverage. 7 U.S.C. § 2(c)(2)(D)(i)(II), (iii), § 6, § 6b. But the statute creates an exception for a contract that "results in actual delivery within 28 days or such other longer period as the Commission may determine by rule or regulation based upon the typical commercial practice in cash or spot markets for the commodity involved". 7 U.S.C. § 2(c)(2)(D)(ii)(III)(aa).

The CFTC opened an investigation to determine whether the precious-metals business conducted by Monex Deposit Co. and affiliates comes within this exception. Monex refused to comply with a subpoena, arguing that since 1987, when it adopted its current business model (which it calls the Atlas program), the CFTC has deemed its business to be in compliance with all federal rules—and Monex adds that because (in its view) it satisfies the exception, the Commission lacks authority even to investigate. The district court enforced the subpoena, however, and Monex turned over the documents. It filed this appeal seeking to have them returned, and it also wants the court to enjoin the CFTC from using them in any enforcement proceeding. These potential remedies mean that the proceeding is not moot. See *Church of Scientology v. United States*, 506 U.S. 9, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992).

It is clear to us, as it was to the district court, that Monex is using its opposition to the subpoena as a means to get a judicial decision on the merits of its statutory argument, before the CFTC makes a substantive decision. That is impermissible. The propriety of an agency's action is reviewed after the final administrative decision. *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980); *Army Corps of Engineers v. Hawkes Co.*, — U.S. ——, 136 S.Ct. 1807, 195 L.Ed.2d 77 (2016). A contention that the agency lacks "jurisdiction" does not change this timing rule. Nor does contesting the agency's jurisdiction change the rules for determining when a subpoena must be enforced. See *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509, 63 S.Ct. 339, 87 L.Ed. 424 (1943); *EEOC v. Sidley Austin Brown & Wood*, 315 F.3d 696, 699–701 (7th Cir. 2002).

■■ An administrative agency is entitled to gather information that is "reasonably relevant" to an inquiry within its purview. *United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 94 L.Ed. 401 (1950); see also, e.g., *EEOC v. Aerotek, Inc.*, 815 F.3d 328 (7th Cir. 2016). The Commission's subpoena sought from Monex information such as how much gold and silver it holds in inventory and what portion of its customers accepts delivery within 28 days. These and similar facts bear on the statutory exceptions. If customers rarely take delivery but instead trade their positions with each other (or sell them back to Monex), then the CFTC may be authorized to treat Monex as a futures merchant rather than leave it unregulated as a retail seller of metals. If Monex lacks enough inventory to deliver on all of its contracts, it may be acting more like a bank in a system of fractional-reserve banking (as the Federal Reserve did in the days when the United States adhered to the gold standard but lacked enough gold to pay off every bit of paper currency). Monex tells us that it has on hand metals enough to fulfill all contracts, and that its customers always take delivery (at least in the sense that metals are transferred to a depository until the full price is paid). If so, Monex may prevail in any enforcement action. But it has not given a good reason why the CFTC is forbidden even to gather the facts that will show whether the exception applies.

As Monex sees things, all the Commission is concerned about is leverage. Some of its customers sign contracts for the delivery of precious metals without paying in full. (The CFTC disclaims any interest in contracts that are paid up when entered into.) When a customer pays less than the full price, Monex transfers the metal to a depository that holds it as collateral. This satisfies the requirement of delivery in 28 days, Monex submits. If final payment is never made, the customer won't get any metal—but that, Monex insists, does not take it outside the scope of § 2(c)(2)(D)(ii)(III)(aa). For its part, the Commission observes that selling commodities on margin or other credit (=leverage) is what brings a business *within* the statute, see § 2(c)(2)(D)(i)(II), and that to take advantage of the exception the business must deliver to the customer—otherwise, the Commission believes, it is engaged in a form of trading "in the contract" that is similar to futures on the Chicago Board of Trade and other exchanges. If the customers can trade their entitlements before full payment, and while the metals remain on deposit, this may be a form of speculation or hedging that the CFTC can regulate. The nature of this to-and-fro reinforces our view that the fight over the subpoena is just a proxy for the dispute about what § 2(c)(2)(D)(ii)(III)(aa) means. It would be premature to resolve that dispute, which must await the final decision in the Commission's enforcement proceeding.

That Monex began its Atlas program in 1987 (relying on guidance that the agency had provided in 1985), and that the CFTC deemed Atlas satisfactory until recently, is not a sufficient answer to the subpoena— or for that matter to an enforcement action. The law changed in 2010, when 7 U.S.C. § 2(c) was rewritten as part of the Dodd–Frank Act. Pub. L. No. 111-203 § 742, 124 Stat. 1376, 1732–33 (2010). The language quoted in this opinion's first paragraph is from the revision. The amendments took effect in 2011, and two years later the Commission laid out its views about how they affect retail commodity sales. Retail Commodity Transactions Under Commodity Exchange Act, 78 Fed. Reg. 52426 (Aug. 23, 2013). Monex insists that it is entitled to prevail under both the statutory text and the CFTC's published interpretation. Maybe so, but

the CFTC is entitled to investigate how a change in governing law and its regulatory approach applies to a merchant that sells commodities on credit. That's all it has done—so far. To repeat, it is premature to decide whether Monex is *right* in its understanding of the exception in § 2(c)(2)(D)(ii)(III)(aa).

We said in *Sidley Austin Brown & Wood* that the district court should resolve a question of statutory coverage before enforcing a subpoena, because it was not established that the agency had *any* role to play and thus it was possible that the information sought was not relevant. But there is no doubt that § 2(c)(2)(D)(i) presumptively brings the Atlas program within the agency's remit and so entitles it to information that is relevant to resolving a dispute about the exemption in § 2(c)(2)(D)(ii)(III)(aa).

Throughout this litigation, the Commission has relied on *U.S. CFTC v. Hunter Wise Commodities, LLC*, 749 F.3d 967 (11th Cir. 2014), which held that a retail metals dealer that implemented a program considerably different from Atlas (Hunter Wise did not carry *any* inventory of metals) was within the scope of § 2(c)(2)(D)(i) and not excluded by § 2(c)(2)(D)(ii)(III)(aa). Monex believes that the Commission misunderstands *Hunter Wise* and that the Eleventh Circuit's decision favors its position. Once again this shows that the parties' clash is only nominally about the subpoena and actually concerns the merits. In *Hunter Wise* a district court issued an injunction blocking the trading program. In affirming that injunction, the Eleventh Circuit necessarily reached the merits of how the 2010 amendments apply to a metals-trading program in which no metals change hands, and all gains and losses depend on trading contracts. Monex may be right that the Atlas program is dispositively different,

but that's a question for an enforcement proceeding. The only question before us is whether the information the CFTC wanted (and now has obtained) is relevant to such a proceeding. It is.

AFFIRMED