**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 41; National Electrical Contractors Association, Inc.; and Building Trades Council of Buffalo, New York & Vicinity, Plaintiffs,**

**v.**

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and Samuel R. Pierce, Jr., as Secretary; Region II, Buffalo Area Office, U.S. Department of Housing and Urban Development and Joseph B. Lynch, Area Manager; Buffalo Municipal Housing Authority and David Echols, as Executive Director; and New York State Department of Labor and Lillian Roberts, as Commissioner of Labor, Defendants.**

Civ–85–1166C.

United States District Court,
W.D. New York.

May 17, 1988.

Lipsitz, Green, Fahringer, Roll, Schuller & James (Stuart M. Pohl, of counsel), Buffalo, N.Y., for plaintiffs.

U.S. Dept. of Justice (Frederick M. Morgan, Jr., of counsel), Washington, D.C., and Roger P. Williams, U.S. Atty. (Donald P. Simet, Asst. U.S. Atty., of counsel), Buffalo, N.Y., for defendant U.S.

Robert Abrams, Atty. Gen. of the State of N.Y. (Andrew Schulz, of counsel), Albany, N.Y., for defendant New York State Dept. of Labor.

Damon & Morey (James N. Schmit, of counsel), Buffalo, N.Y., for defendant Buffalo Mun. Housing Authority and David J. Echols.

Blitman & King (Jules L. Smith, of counsel), Syracuse, N.Y., and Sherman, Dunn, Cohen, Leifer & Counts (Terry R. Yellig, of counsel), Washington, D.C., for amicus curiae Bldg. and Const. Trades Dept.

CURTIN, Chief Judge.

Plaintiffs bring five causes of action alleging that defendants have improperly determined and applied wage rates for work on projects under the Comprehensive Improvement Assistance Program [CIAP], 42 U.S.C. § 1437l.

CIAP, which is part of the United States Housing Act of 1937 [the "Housing Act"], 42 U.S.C. § 1437, *et seq.*, authorizes the use of federal funds for the repair and renovation of public housing. The Secretary of the United States Department of Housing and Urban Development [HUD] provides local public housing authorities with the applicable minimum wage rates to be inserted in bid papers for CIAP work, and allocates funds for the work, pursuant to HUD's responsibility to administer the Housing Act. As discussed below, if the CIAP work tasks are classified as "development" work under the Housing Act, HUD must adopt the minimum wage rates set for such work by the United States Department of Labor pursuant to the Davis–Bacon Act, 40 U.S.C. § 276a, *et seq.* [Davis–Bacon wage rates]. If the work tasks are classified as "operation" work

under the Housing Act, HUD may determine the minimum wage rates itself [HUD-determined wage rates]. Davis–Bacon wage rates are usually substantially higher than HUD-determined wage rates.[1]

In Count One of the instant action, plaintiffs challenge HUD's promulgation of the regulation codified in 24 C.F.R. § 968.3. Plaintiffs contend that this regulation conflicts with the Housing Act's definition of "development" and "operation" work by restricting the scope of the former and expanding the scope of the latter (thereby increasing the amount of work compensated at lower, HUD-determined wage rates). Item 6, ¶ 38.

In Counts Two, Three, and Four, plaintiffs challenge defendants' implementation of 24 C.F.R. § 968.3 at various CIAP projects on which plaintiffs worked. Item 6.

In Count Five, plaintiffs charge defendants with violating provisions of New York State law. Plaintiffs contend that section 152 of the New York Public Housing Law requires defendants to include within the bid specifications for the CIAP projects referenced in Counts Two, Three, and Four, and others referenced in Count Five, the prevailing wage rates set by the New York State Commissioner of Labor pursuant to section 220 of the New York State Labor Law. Items 6, 18. These wage rates are typically higher than both Davis–Bacon and HUD-determined wage rates.[2] Plaintiffs allege that defendants violated these provisions of New York State law by including lower, HUD-determined wage rates in the bid specifications. Item 6.

Plaintiffs seek declaratory and injunctive relief against the implementation, enforce-

---

**1.** The parties disagree as to the relative wage rates, but each represents the differences as substantial. Item 26, Exh. D; Item 36; Item 46, Exh. 5. Plaintiffs represent the differences for selected occupations between Davis–Bacon wage rates, HUD-determined wage rates, and State Labor Law-determined wage rates as follows (defendants represent somewhat greater differences):

| Occupation | Rate |
|---|---|
| Steamfitters: | |
| Davis–Bacon | $10.11 per hour |
| HUD-determined | $ 6.50 per hour |
| State-determined | 17.92 per hour |
| Bricklayers | |
| Davis–Bacon | $ 8.96 per hour |
| HUD-determined | 6.50 per hour |
| State-determined | 16.66 per hour |
| Plumbers | |
| Davis–Bacon | $10.11 per hour |
| HUD-determined | 6.50 per hour |
| State-determined | 12.67 per hour |

**2.** *See* Footnote 1.

ment, and application of the regulation codified at 24 C.F.R. § 968.3. Plaintiffs also seek declaratory and injunctive relief for defendants' alleged failure to comply with the requirements of New York Public Housing Law § 152 and Labor Law § 220.

Plaintiffs invoke the jurisdiction of this court pursuant to 28 U.S.C. § 1331(a), 28 U.S.C. § 1337, 28 U.S.C. § 1361, and pursuant to the doctrine of pendent jurisdiction. Item 6, ¶¶ 4, 5.

Federal defendants now move to dismiss plaintiffs' complaint, pursuant to Fed.R. Civ.P. 12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56, dismissing plaintiffs' fifth count. Defendant BMHA moves to dismiss plaintiffs' entire complaint pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6), and 12(c). Items 23, 24. Plaintiffs move for summary judgment on Count Five, pursuant to Fed. R.Civ.P. 56. Item 17.[3]

*Count One*

The content of the regulation promulgated by HUD and codified at 24 C.F.R. § 968.3 is the source of the dispute at issue in Count One. This regulation defines a category of work for CIAP projects entitled "nonroutine maintenance," to which HUD-determined wage rates apply. Plaintiffs contend that this regulation contravenes the Housing Act because "nonroutine maintenance" is allegedly defined to include work which the Housing Act makes subject to higher Davis–Bacon wage rates.

The Housing Act requires payment of Davis–Bacon wage rates for "development" work and HUD-determined wage rates for "operation" work. 42 U.S.C. § 1437j. The Housing Act defines "development" and "operation" work as follows:

(1) The term "development" means any or all undertakings necessary for planning ... construction, or equipment, in connection with a lower income housing project.... Construction activity in connection with a lower income housing project may be confined to the recon-

struction, remodeling, or repair of existing buildings.

42 U.S.C. § 1437a(c)(1).

(2) The term "operation" means any or all undertakings appropriate for management, operation, services, maintenance, security ... or financing in connection with a lower income housing project.

42 U.S.C. § 1437a(c)(2).

Since "maintenance" work is "operation" work under section 1437a(c)(1), HUD treats all work within the category of "nonroutine maintenance" established by 24 C.F.R. § 968.3 as "operation" work subject to lower, HUD-determined wage rates. Plaintiffs contend, however, that the definition of "nonroutine maintenance" in 24 C.F.R. § 968.3 is overly expansive. Plaintiffs contend that much of the work defined as "nonroutine maintenance" is actually "reconstruction, remodeling, or repair" work defined as "development" work by § 1437a(c)(1) of the Housing Act, and therefore properly subject to higher Davis–Bacon wage rates. 24 C.F.R. § 968.3 defines "nonroutine maintenance" as follows:

"Non-routine maintenance" means work items that ordinarily would be performed on a regular basis in the course of upkeep of a property, but have become substantial in scope because they have been put off, and that involve expenditures that would otherwise materially distort the level trend of maintenance expenses. Non-routine maintenance may include replacement of equipment and materials rendered unsatisfactory because of normal wear and tear by items of substantially the same kind. Work that constitutes reconstruction, a substantial improvement in the quality or kind of original equipment and materials, or remodeling that alters the nature or type of housing units is not nonroutine maintenance.

Plaintiffs note that after promulgation of 24 C.F.R. § 968.3, HUD issued to local public housing authorities a Notice and Handbook of Guidelines [Guidelines] which

---

**3.** Defendants State of New York and Lillian Roberts do not move against plaintiffs' complaint at this time. These defendants have cross-claimed against the federal defendants, Item 14, but that cross claim is not presently before the court upon any motion. Item 21.

distinguished between CIAP work tasks to which Davis–Bacon wage rates applied and "nonroutine maintenance" tasks to which HUD-determined wage rates applied. Item 26, Exh. B. The Guidelines classified approximately 75 specific work tasks in this manner. *Id.* Plaintiffs contend that many of these work tasks should not be classified as subject to HUD-determined rates because they involve "reconstruction, remodeling, or repair" work for which Davis–Bacon wage rates are required by the Housing Act. Examples cited by plaintiffs include the tasks of "tuckpointing of exterior brick walls;" the "repainting of interior and exterior surfaces;" and the "demolition of buildings followed only by filling in the site and establishing a lawn." Item 6, ¶¶ 34, 35; Item 26, Exh. B.

In sum, plaintiffs allege that 24 C.F.R. § 968.3 and the aforementioned Guidelines contravene the Housing Act in that they "remov[e] from the type of construction work deemed by Congress to be 'development' ... and, in effect, add to that variety of work deemed by Congress to be 'operation'...." Item 35, pp. 5–6. Plaintiffs ask this court to declare the regulation unlawful and in violation of the Housing Act. Item 6, p. 25.

HUD argues that Count One of plaintiffs' complaint should be dismissed because plaintiffs have failed to exhaust administrative remedies. HUD bases this argument upon 29 C.F.R. § 5.13, which provides as follows:

> All questions relating to the application and interpretation of wage determinations (including the classifications therein) issued pursuant to Part 1 of this subtitle, of the rules contained in this part and in Parts 1 and 3, and of the labor standards provisions of any of the statutes listed in § 5.1 shall be referred to the Administrator for appropriate ruling or interpretation. The rulings and interpretations shall be authoritative and those under the Davis–Bacon Act may be relied upon as provided for in section 10 of the Portal-to-Portal Act of 1947 (29 U.S.C. 259). Requests for such rulings and interpretations should be addressed to the Administrator, Wage and Hour

Division, ... U.S. Department of Labor....

HUD notes that the Housing Act is one of the "Davis–Bacon related acts" listed in 29 C.F.R. § 5.1(a) (1985). HUD contends that plaintiffs' first count centrally concerns the "application and interpretation of wage determinations (including the classification therein) ... of the Labor standard provisions" of the Housing Act, and that plaintiffs' first count is therefore subject to the exhaustion requirement of 29 C.F.R. § 5.13—review by the Wage and Hour Administrator. HUD correctly notes that if plaintiffs are required to exhaust administrative remedies with respect to their first cause of action, and have failed to do so, this court lacks jurisdiction over that claim. Item 25, pp. 25–28. Since plaintiffs have not sought review by the Wage and Hour Administrator, HUD argues that this court is without jurisdiction to hear plaintiffs' first count.

However, plaintiffs contend that their first count fits within a recognized exception to the exhaustion doctrine. Item 33, pp. 4–8. As noted, plaintiffs' first count alleges that HUD's promulgation of C.F.R. § 968.3 was arbitrary and capricious because it contradicts provisions of the Housing Act; therefore, plaintiffs argue, their first claim only involves a question of statutory interpretation by this court, and exhaustion is not required. Plaintiffs cite *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), in support of this proposition, wherein the Court stated:

> The question ... is ... solely one of statutory interpretation. The resolution of that issue does not require any particular expertise on the part of the [agency]; the proper interpretation is certainly not a matter of discretion.... Since judicial review would not be significantly aided by an additional administrative decision of this sort, we cannot see any compelling reason why [McKart's] failure to appeal should bar his only defense to a criminal prosecution.

*Id.* at 197–99, 89 S.Ct. at 1665. Plaintiffs also cite *Touche Ross, and Co. v. Securi-*

*ties and Exchange Commission,* 609 F.2d 570 (2d Cir.1979), in which the court rejected the Security and Exchange Commission's [SEC] administrative exhaustion argument as to that portion of the plaintiff's claim which challenged the SEC's regulations as being in excess of statutory authority.

HUD argues that these cases can be clearly distinguished from the instant case. Item 46, pp. 5–8. Defendants note that in *Touche Ross,* the Second Circuit applied what is specifically acknowledged to be a narrow exception to the exhaustion requirement. *Id.* at 576. In *Touche Ross,* the defendant SEC argued that plaintiffs were required to exhaust administrative processes which themselves, plaintiffs argued, were in excess of the SEC's statutory authority. The court found that in these circumstances the exhaustion requirement was waived, because "to require appellants to exhaust their administrative remedies would be to require them to submit to the very procedures which they are attacking." *Id.* at 577. The court added that "[m]oreover, the issue is one of purely statutory interpretation. [Citations omitted]. Further agency action is unnecessary to enable us to determine the validity of [the administrative process at issue."] *Id.* at 577.

HUD notes that, by contrast, plaintiffs in the instant case do not attack the *provision* in 29 C.F.R. § 5.13 for administrative review by the Wage and Hour Administrator. Rather, plaintiffs contend that their claim that HUD exceeded its statutory authority by promulgating a regulation contravening the Housing Act is not reviewable *under* that provision.

HUD contends that review by the Wage and Hour Administrator is applicable to plaintiffs' first count, because such review is mandated by 29 C.F.R. § 5.13 for *"all questions* relating to the application and interpretation of wage determinations" (emphasis added), and plaintiffs do not challenge the validity of 29 C.F.R. § 5.13. HUD maintains that plaintiffs' first count

therefore does not fall within the narrow exception to the exhaustion doctrine recognized by *Touche Ross.* HUD contends, further, that as distinct from the circumstances in *Touche Ross* and *McKart,* plaintiffs' first count in the instant case cannot be determined solely as a matter of statutory interpretation; rather, the application of agency expertise in an additional administrative decision is necessary to that determination.

Finally, HUD argues that numerous cases demonstrate the propriety of the Wage and Hour Administrator's exercise of jurisdiction over disputes analogous to the one presented here. HUD cites, for example, *In Re: Watertown Housing Authority, Construction Contracts G–6 & G–7, Masonry Reconstruction and Restoration East Hills and Maywood Terrace,* N.Y. WAB Case No. 83–8 (June 17, 1983) (Item 26, Exh. F), in which the Wage Appeals Board[4] considered whether Davis–Bacon or HUD-determined wage rates should be paid to masons performing CIAP work on a Syracuse, New York, public housing project. The Wage Appeals Board determined that Davis–Bacon rates did not have to be paid, restricting its decision solely to the facts of the case before it. *Id.* at p. 5. HUD also cites *North Georgia Building and Construction Trades Council v. Goldschmidt,* 621 F.2d 697 (5th Cir.1980), in which the court indicated that the Wage Appeals Board had jurisdiction to determine whether the Federal Aviation Administration properly determined that contracts for federally funded airport construction should include specifications for "heavy construction" as against higher rates for "building." *Id.* at 704. HUD also cites *Mader Construction Corp. v. U.S. Dept. of Labor,* 607 F.Supp. 459 (W.D. N.Y.1985), in which the court held that plaintiff was required to present questions of law [whether the agency's wage underpayment claim against plaintiff was barred by the statute of limitations] to the Wage Appeals Board before seeking to litigate

---

**4.** The Wage Appeals Board hears appeals from the decision of the Wage and Hour Administrator. 29 C.F.R. § 7.1(b) (1979); *North Georgia*

*Building and Trades Council v. Goldschmidt,* 621 F.2d 697, 704 (5th Cir.1980).

them in district court. The court stated that

> [t]he instant case clearly calls for the application of the exhaustion doctrine. Judicial intervention into the agency's processes may deny the agency an opportunity to correct its mistakes, if any there be, and to apply its expertise.

*Id.* at 462–63, *citing Federal Trade Commission v. Standard Oil Co. of California,* 449 U.S. 232, 242, 101 S.Ct. 488, 494, 66 L.Ed.2d 416 (1980).

■ On the present record, I find HUD's arguments to be persuasive. I note first that the language defining "nonroutine maintenance" in 24 C.F.R. § 968.3 does not, of itself, conclusively contradict the Housing Act's distinction between "reconstruction, remodeling, or repair" work subject to Davis–Bacon wage rates and "maintenance" work subject to HUD-determined wage rates. First, the regulation's definition of "nonroutine maintenance" explicitly *excludes* "reconstruction" and "remodeling" work ("Work that constitutes reconstruction ... or remodeling ... is not nonroutine maintenance." 24 C.F.R. § 968.3). Second, it simply cannot be determined solely from the language of the regulation whether "nonroutine maintenance" impermissibly encompasses what the Housing Act classifies as "repair" work: the regulation describes, in very general terms, work activity that could be fairly understood as either maintenance or repair work ("Nonroutine" maintenance means work items that ordinarily would be performed on a regular basis in the course of upkeep of a property, but have become substantial in scope because they have been put off.... 24 C.F.R. § 968.3).

Further guidance as to whether "nonroutine maintenance" includes "repair" work is provided by the subsequently issued Guidelines which, as noted, specify approximately 75 "nonroutine maintenance" work tasks. However, while it may be possible to determine from the Guidelines what cannot be ascertained solely from 24 C.F.R. § 968.3, that determination is clearly one to which the exhaustion doctrine should apply. Agency expertise is clearly essential to determining whether specific tasks such as "tuckpointing of exterior brick walls" and "repainting of interior and exterior surfaces," etc., are "repair" or "maintenance" work under the Housing Act, and why.

In short, plaintiff's first cause of action cannot be determined solely as a matter of statutory interpretation, and initial review by the Wage and Hour Administrator pursuant to 29 C.F.R. § 5.13 is important to that determination. The rationale underlying the exhaustion doctrine is that a court's refusal to intervene prematurely in the administrative process gives the agency an opportunity to develop factual findings, to apply its expertise to new issues and to correct its own errors, if any. *Touche Ross, supra,* at 574, *citing McKart v. United States, supra,* 395 U.S. at 193–95, 89 S.Ct. at 1662–63. Each of those goals is served by application of the exhaustion doctrine here.

Finally, review by the Wage and Hour Administrator is appropriate in this action for an additional reason. Prior to promulgating the regulation codified at 24 C.F.R. § 968.3, HUD sought advice from the United States Department of Labor [Department of Labor] as to the proper classification of anticipated work items under CIAP.[5] In seeking that advice, HUD in-

---

**5.** HUD states that the Department of Labor is the appropriate agency to give such advice by virtue of Reorganization Plan No. 14 of 1950, 15 Fed.Reg. 3176 (1950), *reprinted in* 5 U.S.C.A. App. at 242 *and in* 65 *Stat.* 1267. In that Plan, the Department of Labor is given authority to "prescribe appropriate standards, regulations, and procedures ... with respect to compliance with and enforcement of ... labor standards" for a number of Acts of Congress. These are called "Davis–Bacon related acts," and include the United States Housing Act. *See* 29 C.F.R.

App. foll. § 1.9 (1985). The Reorganization Plan

> authorize[d] the Secretary of Labor to coordinate the administration of legislation relating to wages and hours on federally financed or assisted projects by prescribing standards, regulations, and procedures to govern the enforcement activities of the various Federal agencies....

5 U.S.C.A.App. at p. 243. *Amicus Curiae,* on behalf of plaintiffs, contend that Reorg. Plan No. 14 of 1950 does not give the Department of

formed the Solicitor of the Department of Labor that much of the anticipated work under CIAP would consist of what HUD initially termed "major repairs." HUD inquired of the Solicitor whether any portion of "major repairs" could fairly be classified as "operation" work within the meaning of the Housing Act. In response, the Solicitor issued a letter opinion concluding that:

"[D]eferred maintenance" refers to work that ordinarily would be performed on a regular basis in the course of the upkeep of a property, but that has become a more major undertaking by putting it off. Under this definition, "deferred maintenance" work items, as a subset (and probably the primary subset) of "major repairs," could be categorized as "operations" under the [Housing Act], since that term is specifically defined in the Act to include "maintenance."

In accordance with this interpretation, any repair or replacement necessitated by normal wear and tear over time would be considered "deferred maintenance," provided that the work is not so substantial as to constitute reconstruction. It would be difficult to categorize such major work as "deferred maintenance" since "reconstruction, remodeling, or repair of existing buildings" is specifically included in the Act's definition of "development," to which the Davis–Bacon provisions apply.

Item 61, Attachment p. 1. HUD states that it thereupon promulgated the regulation codified at C.F.R. § 968.3, defining as "nonroutine maintenance" the work described by the Solicitor as "deferred maintenance."

The Department of Labor is thus peculiarly apprised of the issues involved in this action, and initial review by the Wage and Hour Administrator is especially appropriate.

In sum, I find that plaintiffs have not exhausted their administrative remedies with respect to their first cause of action, and that claim is accordingly dismissed for lack of jurisdiction.

*Counts Two, Three, and Four*

In Counts Two, Three, and Four, plaintiffs challenge defendants' implementation of 24 C.F.R. § 968.3 at various CIAP projects on which plaintiffs worked. Item 6. Plaintiffs allege that the wage determinations issued by HUD for work on these projects improperly specified HUD-determined wage rates for work which plaintiffs claim is actually "development" work under the Housing Act. Plaintiffs ask this court to declare that the application of 24 C.F.R. § 968.3 to these projects is arbitrary, capricious, and an abuse of discretion by HUD.

In response, HUD argues that these claims are also subject to the exhaustion requirement of 29 C.F.R. § 5.13—review by the Wage and Hour Administrator. Since plaintiffs have not sought such review, HUD contends that these claims should be dismissed for lack of jurisdiction.

Plaintiffs maintain that administrative review by the Wage and Hour Administrator under 29 C.F.R. "applies solely to rulings and interpretation of Davis–Bacon determined rates." Item 33, p. 8. Plaintiffs state that, by contrast, they are challenging "HUD's implementation of [24 C.F.R. § 968.3] to designate work previously defined by Congress as 'development' work ... as 'operation' work...." *Id. Amicus Curiae*, on behalf of plaintiffs, argue that Congress clearly intended for the Labor Department and HUD to have separate responsibility for administering wage determinations for "development" and "operation" work, and that the Wage and Hour Administrator therefore only has authority to review the former. Item 30, pp. 27–28. *Amicus Curiae* apparently concludes that HUD-determined wage rates for "operation" work, like those contested by plain-

Labor authority to review wage rate determinations by HUD for "operation" work. Item 30, p. 27. However, neither *Amicus Curiae* nor plaintiffs contest HUD's statement that the Department of Labor was the appropriate agency to advise HUD, prior to promulgation of 24 C.F.R. § 968.3, on the definitional issues raised by HUD. Those issues appear to clearly invoke the Secretary of Labor's authority under the Reorganization Plan to "coordinate the administration of legislation relating to wages ... on federally financed or assisted projects...."

tiffs here, are not subject to any exhaustion requirements specified by 24 C.F.R. § 5.13, and can be challenged directly in federal court. *Id.*

■ However, as noted, 24 C.F.R. § 5.13 explicitly refers *"all questions* relating to the application and interpretation of wage determinations (including the *classifications* therein)"* of the labor standards provisions of the Housing Act to the Wage and Hour Administrator. 24 C.F.R. § 5.13 (emphasis added). Further, it is clear from *In Re: Watertown Housing Authority, supra,* and other cases cited by HUD, that the Wage Appeals Board views disputes regarding whether work is "development" or "operation" work to be properly within its jurisdiction. I believe it is clear that plaintiffs' challenge to the specific wage determinations at issue in Counts Two, Three, and Four is subject to the exhaustion requirement of 24 C.F.R. § 5.13, which plaintiffs have not satisfied. Accordingly, Counts Two, Three, and Four of plaintiffs' complaint are also dismissed for lack of jurisdiction.

*Count Five*

As discussed previously, plaintiffs' fifth cause of action alleges that defendants have violated provisions of New York State law. As such, and in light of the above, Count Five of the complaint is no longer pendent to any federal claim and must be dismissed, without prejudice to its reassertion in a court of competent jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Accordingly, the motions of federal defendants and BMHA are granted, and plaintiffs' complaint is dismissed in its entirety as against all defendants.

So ordered.