**R.J. REYNOLDS TOBACCO COMPANY, Plaintiff,**

v.

**UNITED STATES FEDERAL TRADE COMMISSION and Robert Pitofsky, Chairman, Defendants.**

**No. 6:97CV00651.**

United States District Court,
M.D. North Carolina,
Winston–Salem Division.

July 17, 1998.

Keith W. Vaughan, Womble Carlyle Sandridge & Rice, Winston–Salem, NC, for Plaintiff.

Gill P. Beck, Office of U.S. Attorney, Greensboro, NC, Gerald C. Kell, U.S. Department of Justice, Washington, DC, Walter Clinton Holton, Jr., Office of U.S. Attorney, Greensboro, NC, for Defendants.

*MEMORANDUM OPINION*

OSTEEN, District Judge.

This matter comes before the court on Defendants' Motion to Dismiss for lack of subject matter jurisdiction. For the reasons stated herein, the court will grant Defendants' motion.

I. Allegations

A. The Complaint

The material facts, taken from the Complaint, are as follows. In 1988, R.J. Reynolds Tobacco Company (Reynolds) introduced an anthropomorphic illustrated camel named Joe to advertise and promote its Camel brand cigarettes. In August 1990, Defendant Federal Trade Commission (FTC or Commission) began investigating the Joe Camel advertising campaign. Over the next four years, Reynolds produced more than 30,000 documents and other items in response to Commission Civil Investigative Demands (CIDs). In May 1993, the FTC's Bureau of Consumer Protection notified Reynolds that it would recommend that the Commission issue a complaint alleging that Reynolds violated § 5 of the FTC Act, 15 U.S.C. § 45, by disseminating advertisements that appealed to underaged smokers. Reynolds submitted additional evidence and

analysis, and the Commission refused to issue the proposed complaint.

In March 1994, the Bureau of Consumer Protection once more notified Reynolds that it would recommend a complaint that alleged Reynolds violated § 5 of the FTC Act. As it had done previously, the Commission rejected the staff recommendation. On June 6, 1994, by a vote of 3–2, the Commission directed the staff to close the investigation. The Commission deviated from its usual procedure by publishing its reasons for directing closure:

> Today, the Commission closes its investigation of the Joe Camel advertising campaign after voting not to issue a complaint. . . .

> Although it may be intuitive to some that the Joe Camel advertising campaign would lead more children to smoke or lead children to smoke more, the evidence to support that intuition is not there . . . . The Commission has spent a great deal of time and effort reviewing the difficult factual and legal questions raised by this case . . . . Because the evidence in the record does not provide a reason to believe that the law has been violated, we cannot issue a complaint.

> . . . [O]ur concern about the health of children led us to consider every possible avenue to a lawsuit before reaching today's decision.

Joint Statement of Commissioners Mary L. Azcuenaga, Deborah K. Owen, and Roscoe B. Starek, III, in *R.J. Reynolds*, File No. 932–3162.

In 1995, the Commission staff again initiated another investigation targeting the Joe Camel advertising campaign. Reynolds received additional CIDs requiring Reynolds to search millions of documents. The Commission staff did not provide Reynolds with notice and opportunity to be heard on the reopening of the investigative file. In March 1997, the staff notified Reynolds that it was again requesting the Commission to file a complaint against Reynolds. The Commission staff did not allow Reynolds an opportunity to rebut the complaint allegations prior to forwarding its complaint to the Commis-

sion. In so doing, the staff allegedly failed to follow Commission practice.

Chairman Pitofsky informed Reynolds that, in accordance with Commission rules, new evidence was the sole basis for the proposed complaint and that, if Reynolds wanted to be heard, it should immediately seek meetings with the Commissioners. Reynolds protested not having enough time to produce evidence to respond. At meetings with the Commissioners, Reynolds made presentations of evidence for the purpose of showing there was no legal or factual basis for the Commission to reverse its 1994 decision to close the investigation. To rebut the Commission's new evidence, Reynolds revealed that a nearly completed national survey being conducted by an independent research organization would contradict a crucial paragraph of the proposed complaint. On May 27, 1997, the office of Chairman Pitofsky requested additional information about the new survey. Reynolds explained that final results of the survey would be available on May 29, 1997. On May 28, 1997, the Secretary of the Commission informed Reynolds that the Commission had met that day and voted 3–2 to issue a complaint alleging that the Joe Camel advertising campaign violated § 5 of the FTC Act, 15 U.S.C. § 45.

Reynolds cites government publications evidencing that the Clinton Administration, including the President, expressed opposition to Reynolds' Joe Camel advertising campaign. In addition, prior to notifying Reynolds, the Commission notified numerous media outlets, members of Congress, and Clinton Administration officials of the Commissioners' meeting and upcoming press conference announcing the complaint. At the press conference, complaint counsel described the underage tracking data, which supported their reason to believe a violation of the law had occurred, as having been available to the Commission at the time it made its original 1994 decision. On May 28, 1997, Donna Shalala, Secretary for Health and Human Services, stated, "[t]he Clinton Administration is committed to kicking Joe Camel and others who glamorize tobacco products out of our children's lives." (Compl.¶¶ 27–29.) On May 29, 1997, Reyn-

olds received the expected survey results, which revealed that Camel's market share among underaged smokers was 3%, approximately the same level that complaint counsel claimed was Camel's share prior to the commencement of the Joe Camel campaign. On June 9, 1997, Reynolds was served with document requests and interrogatories requiring review of over four million pages spanning 25 years of Reynolds' operations.

On June 17, 1997, Reynolds filed this lawsuit alleging three causes of action and claiming jurisdiction pursuant to 28 U.S.C. § 1331. In Count I, Reynolds alleges the Commission violated its own rules and the Administrative Procedure Act (APA) by reopening an investigation without Commission authorization and by failing to provide Reynolds an opportunity to submit relevant information prior to the recommendation of a complaint. Count I further alleges that the Commission issued the complaint in response to political pressure from the Clinton Administration and members of Congress, without new evidence contradicting the Commission's 1994 decision, and in conscious disregard of exculpatory evidence. Reynolds claims that the Commission's actions have tainted the investigatory and adjudicative processes in contravention of the APA. In Count II, Reynolds alleges the Commission violated the Government in the Sunshine Act, 5 U.S.C. § 552b and 16 CFR § 4.15, by failing to announce its May 28, 1997 meeting, failing to make public its vote at the beginning of the meeting to close the meeting, and the failure to make public any part of the transcript of the May 28, 1997 and June 6, 1994 meetings. In Count III, Reynolds alleges the Commission violated the Fifth Amendment due process clause by disregarding Commission rules and procedures and by filing a complaint in response to undue political pressure. Reynolds seeks an order requiring the Commission to close its investigation and withdraw its complaint.

**B. The Administrative Proceeding**

The Commission's adjudication is ongoing. Without consenting to the Commission's jurisdiction to decide the issue, Reynolds pleaded affirmative defenses in the administrative proceeding which raised the same procedural

and constitutional violations that form the basis of the complaint before this court. The administrative law judge (ALJ) ordered the defenses stricken from Reynolds' answer. The Commission denied Reynolds' petition for review of the ALJ's order striking the defenses.

## II. Standard of Review

In reviewing a motion to dismiss for lack of jurisdiction over the subject matter, the court reads the Complaint as a whole, construing it broadly and liberally. *Flue–Cured Tobacco Co–Op. v. U.S. E.P.A.*, 857 F.Supp. 1137, 1140 (M.D.N.C.1994). The court considers all uncontroverted factual allegations to be true but does not accept unsupported conclusions of law. *Id.* The court construes the allegations within the Complaint in favor of the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

## III. Review of Ongoing Administrative Adjudications

■ The Supreme Court, in *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938), first articulated the principle that a federal court will not intervene in administrative agency proceedings when the agency has yet to take final action. Congress codified the *Myers* finality requirement in the APA at 5 U.S.C. § 704. There are two avenues available under the APA to review agency actions. The first is a statute permitting review; the second is "final agency action." No statute provides for review of the action in question, and none is cited in the Complaint. Some cases have recognized narrow circumstances in which federal courts have jurisdiction to review ongoing FTC adjudications. Such cases involve deprivation of fundamental due process rights, agency action in excess of express statutory authority, or unreasonable agency delay. *See* Jerald J. Director, Annotation, *Jurisdiction of Federal District Court to Entertain Attacks on Federal Trade Commission's Actions,* 16 A.L.R. Fed. 361, at § 4 (1973 & Supp.).

Reynolds relies upon *Leedom v. Kyne,* 358 U.S. 184, 188, 79 S.Ct. 180, 183, 3 L.Ed.2d 210 (1958), which held that agency action is reviewable in the district court, where the agency's action was taken in direct defiance of a statutory prohibition, depriving the plaintiff of a right assured by Congress. Reynolds asserts the FTC acted in direct defiance of Rules of Practice for Adjudicative Proceedings § 3.72.[1] Reynolds, in turn, relies upon *Elmo Div. of Drive–X Co. v. Dixon,* 348 F.2d 342 (D.C.Cir.1965) for the proposition that agency violation of procedural regulations warrants district court intervention.

■ In *Elmo,* the plaintiff entered into a consent settlement with the FTC which provided that the settlement could be set aside in a manner consistent with the Commission's Rules of Practice. Subsequently, the Commission sidestepped the stipulated reopening procedure and instituted a new complaint dealing with substantially the same matters. The D.C. Circuit Court held "that the incorporation of [the procedural rule] into the consent decree which is ... binding on the Commission gives rise to an enforceable right in appellant to require the Commission to abide by the Rule." *Id.* at 345. The D.C. Circuit Court did "not inquire whether the statutory language alone or taken together with the promulgation of the implementing Rule, would give rise to an enforceable right." *Id.* at 346.[2] This court need not,

---

**1.** The rule states in part:
Whenever the Commission is of the opinion that changed conditions of fact or law or the public interest may require that a Commission decision containing a rule or order which has become effective, ... or a Commission decision containing an order dismissing a proceeding, should be altered, modified, or set aside in whole or in part, the Commission will ... serve upon each person subject to such decision ... an order to show cause ....
16 C.F.R. § 3.72(b)(1). The Complaint states that the FTC also violated § 2.31. In its brief, Reynolds states a violation of § 2.31 provides evidence of FTC's pattern of behavior in violating important procedural regulations.

**2.** The Fourth Circuit has held federal agencies to strict compliance with their own regulations and rules of procedure when the agency's failure to observe its rules results in prejudice to a party. *See McCourt v. Hampton,* 514 F.2d 1365, 1370 (4th Cir.1975) ("requiring the government to live up to regulations for the conduct of its own affairs when noncompliance results in prejudice to an adverse party ....").

however, determine whether violations of procedural regulations justify enjoining an FTC adjudication.

Reynolds argues that before issuing the 1997 complaint, the Commission was required by its rules to reopen its June 1994 decision. The court disagrees. The Commission's Rules of Practice for Adjudicative Proceedings "govern procedure in adjudicative proceedings." 16 C.F.R. § 3.1. Adjudicative proceedings are formal proceedings, *id.* at § 3.2, "commenced when an *affirmative* vote is taken by the Commission to *issue* a complaint." *Id.* at § 3.11 (emphasis added). The Commission's June 1994 vote against issuing a complaint may have been an agency order, but it was not an adjudicative proceeding granting Reynolds rights under the Rules. Prior to May 28, 1997, no adjudicative proceeding had commenced. Accordingly, Reynolds had no rights under § 3.72.

The court finds disturbing the Commission's alleged conduct during May 1997. The Complaint suggests that the Commission decided to issue the administrative complaint on May 28 in order to avoid the availability of evidence on May 29. If such suggestion is accurate, the Commission would find it difficult to persuade the court that its actions were rationally related to a legitimate government interest. It is a fundamentally unfair procedure for the government to issue an administrative complaint in a fashion designed solely to avoid exculpatory evidence. The court may not, however, entertain the merits of this matter or Reynolds' remaining allegations.

■ The court is precluded from asserting subject matter jurisdiction by the holding in *FTC v. Standard Oil Co. of Calif.,* 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980) (*Socal*). In *Socal,* the FTC issued an administrative complaint, pursuant to 15 U.S.C. § 45(b), alleging that the Commission had "reason to believe" that various oil companies, including Socal, were violating the FTC Act, 15 U.S.C. § 45(a)(1). While adjudication court is not persuaded by such reasoning.

Reynolds contests the Commission staff's March 1997 decision to request a complaint without reopening procedures and the validity of the resulting adjudication. It does not contest the Commission's June 1994 decision. There has not yet been final agency action stemming from the FTC's March 1997 decisions. Thus, Reynolds' protestations fall squarely within *Socal.*

The Complaint does not demonstrate that the FTC is acting outside of its statutory authority. It does not appear that Reynolds has been deprived of fundamental statutory, regulatory, or due process rights; nor has there been unreasonable agency delay. Accordingly, the court finds no grounds for interlocutory appeal.[3] Lacking jurisdiction over the subject matter to review the Commission's actions, the court lacks jurisdiction under 5 U.S.C. § 552b(h)(2) to hear Reynolds' Sunshine Act claims. The court will enter a judgment granting Defendants' Motion to Dismiss.

A judgment in accordance with this memorandum opinion will be filed contemporaneously herewith.

### JUDGMENT

IT IS ORDERED AND ADJUDGED that Defendants' Motion to Dismiss [3] pursuant to Fed.R.Civ.P. 12(b)(1) is granted. Lacking jurisdiction over the subject matter, the court dismisses R.J. Reynolds Tobacco Company's cause of action.

In accordance with the memorandum opinion filed contemporaneously herewith.

---

3. Upon final agency action, Reynolds may seek relief for the Commission's alleged violations. *See FTC v. Standard Oil Co. of Calif.,* 449 U.S. 232, 245, 101 S.Ct. 488, 496, 66 L.Ed.2d 416

(1980) (explaining Administrative Procedure Act provisions for review of agency violations where there is an inadequate administrative record).