### INVENTION SUBMISSION CORPORATION, Plaintiff,

v.

**James E. ROGAN, Undersecretary of Commerce for Intellectual Property and Director, United States Patent and Trademark Office, U.S. Department of Commerce, Defendant.**

### No. CIV.A. 02–1038–A.

United States District Court, E.D. Virginia, Alexandria Division.

Oct. 30, 2002.

Richard C. Sullivan, Jr., Reed Smith LLP, Falls Church, VA, for Plaintiff.

Rachel C. Ballow, Asst. U.S. Attorney, U.S. Attorney's Office, Alexandria, VA, for Defendant.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

This matter is before the Court on defendant's Motion to Dismiss plaintiff's complaint. For the reasons set forth below, the motion will be granted.

## BACKGROUND

This case arises out of efforts by the United States Patent and Trademark Office ("PTO") to implement the Inventors' Rights Act of 1999 ("IRA"). 35 U.S.C. § 297 (2002). The IRA was designed to protect inventors who each year "lose tens of millions of dollars" to "invention promotion scams." 141 Cong. Rec. S14521 (Nov. 10, 1999).

The IRA mandates certain disclosures by invention promoters to their customers and provides for a private right of action against invention promoters. The IRA also requires the Commissioner of Patents to receive complaints regarding invention promoters and make these complaints available to the public. 35 U.S.C. § 297. Specifically, the IRA provides that the PTO

shall make all complaints received by the Patent and Trademark Office involving invention promoters publicly available, together with any response of the invention promoters. The Commissioner of Patents shall notify the invention promoter of a complaint and provide a reasonable opportunity to reply prior to

making such complaint publicly available.

35 U.S.C. § 297(d)(1).

In September of 2000, the PTO adopted regulations implementing the IRA, and set up a website on which to publish complaints received under the IRA. The regulations state that "the invention promoter named in the complaint will be notified of the complaint and given 30 days to respond. The invention promoter's response will be made available to the public along with the complaint." 37 C.F.R. § 4.4 (2002).

In August 2001, the PTO received a complaint from Edward Lewis regarding the plaintiff, Invention Submission Corporation ("ISC"), in which Lewis alleged that he paid ISC for help patenting and marketing his invention and received nothing in return. Lewis wrote in his complaint "[t]he representative indicated to me that I would make a lot of money with my invention and I have made nothing." Shortly after receiving Lewis' complaint, the PTO contacted Lewis and solicited his participation in a PTO media campaign regarding invention promotion companies. Lewis agreed to participate by appearing in television and print advertisements.

On January 10, 2002, the PTO issued a press release announcing a nationwide media campaign "to counter the flood of deceptive advertising aimed at America's independent inventors." The campaign included television and print advertisements that featured a picture of Lewis and his statement that he spent $13,000 and three years and "[hasn't] seen a penny." The advertisements, which ran from January through May of 2002, did not mention ISC by name. However, in response to a request from TechTV, a cable television network, the PTO disclosed contact information for Lewis to a TechTV reporter. After interviewing Lewis, TechTV ran a story in which it identified ISC as the invention promoter involved in the Lewis complaint.

On March 1, 2002, after the general media campaign had begun, but before Lewis' complaint was posted on the PTO website, the PTO gave ISC notice of the Lewis complaint. On March 26, 2002, Lewis attempted to withdraw his complaint, apparently after settling with ISC, and requested that the PTO discontinue using him in their media campaign. By letter that same day, John Calvert of the PTO informed Lewis that his request to withdraw his complaint was received and the complaint would not be posted on the website. The record establishes that Lewis' complaint never appeared on the website. The TV ads, however, continued to run until March or April of 2002.

Plaintiff alleges in its complaint that the PTO's actions with respect to ISC are motivated by bias. As evidence of this bias, plaintiff cites public statements by John Calvert, Acting Director of the Office of Independent Inventor Programs, in which he states that he hates "these invention marketing firms" and wants to "put these people out of business." None of these statements mention ISC specifically.

On June 17, 2002, plaintiff brought the instant complaint in which it claims that the PTO's use of Lewis' complaint in its media campaign was a final agency action which is reviewable under the Administrative Procedures Act ("APA"). Plaintiff seeks declaratory and injunctive relief.

## DISCUSSION

### A. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is properly granted where, assuming the facts in the complaint are true, it is clear as a matter of law that no relief could

be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Here, assuming the truth of plaintiff's allegations regarding the PTO's actions with respect to the Lewis complaint and the statements made by PTO officials, defendant makes two arguments for dismissal. First, defendant argues that the action taken by the PTO was not a final agency action within the meaning of the APA. Second, defendant argues that plaintiff's claim is moot because all advertisements and references to the Lewis complaint have been discontinued. Because we find that plaintiff's complaint fails to state a cause of action under the APA, we decline to address defendant's mootness argument.

### B. Administrative Procedures Act Claim

■ The APA authorizes review of "final agency action" for which there is no other adequate remedy in a court. 5 U.S.C. § 704 (2002). The Act defines agency action as "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). An agency action will be considered final for purposes of judicial review if it is definitive and has direct or immediate legal force or practical effect, if the questions at issue are purely legal, and if immediate judicial review would foster agency and judicial efficiency. *Federal Trade Comm'n v. Standard Oil Co. of Cal.,* 449 U.S. 232, 239–40, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980).

■ Although plaintiff's complaint is extremely vague as to the specific final agency action at issue, in its opposition to the Motion to Dismiss plaintiff makes clear that it claims "[t]he PTO's conduct in publicizing the Lewis complaint outside the

neutral forum mandated by the IRA, together with its purported determination that Lewis was a victim of a 'scam,' was final agency action which is reviewable under the APA." Pl. Opp. at 14. We construe this explanation as an allegation that the PTO's actions were in the form of a sanction against ISC. Plaintiff also alleges that the PTO's actions are reviewable because they constitute a violation of the PTO's own regulations regarding inventor complaints.

At oral argument, plaintiff's counsel represented that its view of final agency action rests upon the reasoning in *Indus. Safety Equip. Assoc., Inc. v. EPA,* 837 F.2d 1115 (D.C.Cir.1988) (*"ISEA"*). In ISEA, the court held that an EPA report recommending industry use of only two types of asbestos protection respirators did not constitute final agency action because it was advisory in nature and, therefore, did not have a direct impact on the plaintiffs. *Id.* at 1121. In *dicta,* however, the court appeared to reject absolute immunity for agency publications because such immunity fails to protect parties from false or unauthorized agency news releases. *Id.* at 1118. The court said that "an agency intent on penalizing a party through adverse publicity, especially false or unauthorized publicity, might well merit a review of its action." *Id.* at 1119. Plaintiff contends that its complaint squarely presents the situation contemplated in ISEA.

Initially, we observe that this Court is not bound by dicta announced by an appellate court in another jurisdiction. However, even if we were bound by the *ISEA* dicta, the plaintiff would not prevail because it has failed to plead facts that would warrant judicial review of the PTO's actions.

First, the PTO's media campaign hardly supports plaintiff's view that the PTO was

"intent on penalizing" the plaintiff because the plaintiff is not named anywhere in the PTO materials. Plaintiff argues that it was "inevitable" that ISC would be identified with these advertisements after the Lewis complaint was published on the PTO website, as required by the IRA. Had the PTO published Lewis' complaint on their website as required by the IRA, ISC would have been identified as the subject of a complaint, regardless of the media campaign. However, the Lewis complaint was never posted on the website. It was Lewis, not the PTO, who publicly identified the plaintiff to the media. ISC's allegation that the combination of the two publications would create the impression that the PTO considered ISC a "scam" operation is too speculative. Even if such an impression were created, an impression alone cannot constitute agency action.

Plaintiff also cites to extemporaneous statements of PTO officials disparaging the invention promotion industry as a whole as evidence of the PTO's desire to sanction plaintiff. This argument is unpersuasive because such statements by agency officials do not, without more, constitute final agency action. *See Hazardous Waste Treatment Council v. Reilly,* 938 F.2d 1390, 1396 (D.C.Cir.1991); *Robishaw Engineering, Inc. v. United States,* 891 F.Supp. 1134, 1150–51 (E.D.Va.1995). Moreover, these statements, like the advertisements, do not mention the plaintiff in particular, but are directed at the industry generally. The PTO officials merely expressed a view, consistent with the Congressional intent behind passage of the IRA, that invention promotion scams harm individual inventors and ought to be eliminated. We find, therefore, that the PTO's general statements about the invention promotion industry cannot be considered equivalent to the agency imposing a sanction on the plaintiff.

Second, the PTO media campaign does not order the plaintiff or any third party to engage in or refrain from any action. In cases considering agency publication as a sanction, courts are careful to distinguish agency publications which are merely advisory in nature, and therefore not deemed agency action, from those that are agency action because they effect a parties' legal rights. *See ISEA,* 837 F.2d at 1120; *Pharmaceutical Mfrs. Assoc. v. Kennedy,* 471 F.Supp. 1224, 1231 (D.Md.1979). The PTO's actions in this case do not even rise to the level of advising the public not to deal with the plaintiff. The advertisements merely alert the public to the PTO's concern about the invention promotion industry and how individual inventors may file complaints against invention promoters.

Finally, plaintiff has not alleged that it has been directly harmed by the defendant's actions. Even if plaintiff had alleged that its business had been harmed by the media campaign, the mere fact that activity by an agency has a "substantial impact" on a party, does not transform that activity into final agency action of which a party may seek judicial review under the APA. *ISEA,* 837 F.2d at 1121. Any harm to plaintiff's business based upon the PTO's statements about invention promoters in general would be indirect and the result of the reactions and choices of individual inventors. Such an indirect impact is not sufficient to support a finding of agency action. *See id.* (rejecting appellant's claim that an EPA report recommending certain asbestos protection respirators constituted an agency sanction because it would likely result in decreased consumer demand).

Plaintiff argues that the risk of a public connection between it and the PTO advertisement forced it to settle the Lewis complaint. Even if plaintiff felt forced to settle the Lewis complaint, such "harm" is

also too indirect to render defendant's actions agency action. It is mere speculation that plaintiff would not have settled the Lewis complaint in the absence of the advertisements. As counsel admitted at oral argument, plaintiff settles the majority of complaints against it and may well have settled this complaint once it received the thirty-day notice of publication on the website, regardless of defendant's media advertising.

For all these reasons, we conclude that plaintiff's argument that its complaint states a claim for judicial review of the PTO's publications under the APA fails. The PTO's publications in this case were merely generic advertisements of agency programs not specifically naming the plaintiff. Any harm to the plaintiff was, at most, indirect.

In its opposition to defendant's Motion to Dismiss, plaintiff also argues that defendant's actions constitute final agency action because they were taken in violation of the IRA statute and agency regulations. However, plaintiff points to no specific regulation that the PTO has violated. Plaintiff complains that it was only notified of Lewis' complaint after the media campaign had begun and seven months after the complaint was received by the PTO. The regulations do not designate a time limit within which the PTO must notify the invention promoter of a complaint. Instead, they require that a promoter receive sufficient time to respond to the complaint. "[T]he invention promoter named in the complaint will be notified of the complaint and given 30 days to respond." 37 C.F.R. § 4.4. Plaintiff was notified of the complaint and resolved it within thirty days of notification, thereby avoiding publication of the Lewis complaint on the PTO website.

■ Even if plaintiff could demonstrate that the defendant violated agency regula-

tions, an agency's failure to follow its own regulations is only actionable under the APA if it results in a final agency action. A violation of agency regulations alone, absent some harm to the plaintiff, is not reviewable. As discussed above, plaintiff has not alleged any specific harm caused by the defendant's actions.

For these reasons we find that plaintiff's complaint fails to state a claim upon which relief can be granted and must be dismissed. An appropriate Order shall issue.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion defendant's Motion to Dismiss is granted and it is hereby

ORDERED that plaintiff's complaint be and is DISMISSED WITH PREJUDICE.[1]

The Clerk is directed to forward copies of this Order to counsel of record.

---

1. This ruling renders moot all pending motions.