In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-2955

MARK FRITZ,

*Plaintiff-Appellant,*

*v.*

TONY EVERS, Wisconsin State Superintendent of Public Instruction,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 15-cv-581-wmc — **William M. Conley**, *Judge.*

ARGUED SEPTEMBER 5, 2018 — DECIDED OCTOBER 23, 2018

Before EASTERBROOK, HAMILTON, and SCUDDER, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Wisconsin requires public officials to report certain events or suspicions about teachers to the Superintendent of Public Instruction. Wis. Stat. §115.31(3)(a). When a qualifying report is made, the state lists the teacher on a public website as "under investigation". Wis. Stat. §115.31(6)(b). Such a report was made about Mark

Fritz in March 2012. In August 2013 the Department of Public Instruction told Fritz that the report about him was not supported by probable cause to believe that he had engaged in misconduct. His name was removed from the site. In this suit under 42 U.S.C. §1983 Fritz alleges that schools would not hire him while he was under investigation. He contends that the state had to afford him a hearing before putting his name on the list of persons under investigation.

This claim was doomed at the outset by the fact that Fritz sued only the Superintendent, in his official capacity. Section 1983 does not authorize awards of damages against states, and a state official (in his official capacity) *is* the state. See *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). In principle, prospective relief could be available under the approach of *Ex parte Young*, 209 U.S. 123 (1908), but Fritz does not contend that his name is likely to appear on the "under investigation" list in the future.

Instead of inviting Fritz to name a different defendant, the district court dismissed the suit on the merits. 2017 U.S. Dist. LEXIS 143840 (W.D. Wis. Sept. 6, 2017). (The opinion says that the suit is dismissed without prejudice, but the judgment is unconditional and therefore with prejudice. Fed. R. Civ. P. 41(b). Thus appellate jurisdiction is secure.) The judge ruled that his complaint does not allege the deprivation of any liberty or property interest, taking the claim outside the scope of the Due Process Clause. (Fritz has abandoned any other theory of recovery.)

*Paul v. Davis*, 424 U.S. 693 (1976), holds that defamation by a public official does not violate the Due Process Clause. Defamation is what this complaint alleges, so it fails under *Paul*. Defamation plus some other injury, such as loss of em-

ployment, may require a hearing. See *Codd v. Velger*, 429 U.S. 624 (1977). But the complaint does not assert that the listing cost Fritz his job. The state statute does not require a teacher under investigation to be fired or otherwise disciplined. It does not authorize adverse action of any kind; it just provides public notice of an investigation. Counsel told us at oral argument that Fritz resigned voluntarily; that's why he was looking for a new position; yet as long as he had a right to maintain his established position it is impossible to blame unemployment on §115.31(6)(b). We therefore agree with the district court that the complaint does not allege a loss of liberty or property.

There's a further problem. Fritz contends that the Constitution requires a hearing before public notice that a charge is under investigation. Yet our legal tradition is notice first, hearing later. Thus criminal charges are filed, whether by indictment or information, before the accused has an opportunity for a hearing. People are arrested, and criminal investigations begun, before adversarial hearings. If the arrest occurs in a public place, even an *ex parte* warrant is unnecessary. See *United States v. Watson*, 423 U.S. 411 (1976). A hearing occurs promptly after an arrest only if the suspect remains in custody. See *County of Riverside v. McLaughlin*, 500 U.S. 44, 51–52 (1991). Civil proceedings also begin long before a hearing. Both civil and criminal charges are public, even though being under a cloud may make it hard for the defendant to get a new job while the proceedings are ongoing.

Probable cause is required to support custody, see *Manuel v. Joliet*, 137 S. Ct. 911 (2017), but not to support a public charge of crime. "[T]here is no such thing as a constitutional

right not to be prosecuted without probable cause." *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013). A criminal trial may occur months if not years after charges become public, and in the interim the accused does not have a constitutional right to a hearing at which a judge will determine whether the grand jury should have issued an indictment. See *Kaley v. United States*, 571 U.S. 320 (2014).

Administrative investigations likewise precede hearings. The Federal Trade Commission or Securities and Exchange Commission may conduct a public investigation and defer a hearing until after it issues a charge and discovery has concluded. Judicial review is impossible until the agency makes its final decision. See *FTC v. Standard Oil Co.*, 449 U.S. 232 (1980). Wisconsin followed the traditional approach: it conducted an investigation to see whether a formal proceeding was warranted, and after concluding that it was not the state closed the investigation and removed the public listing. It would upset more than two centuries of practice to declare that approach a violation of the Constitution.

AFFIRMED

HAMILTON, *Circuit Judge*, concurring. I agree with my colleagues that the district court's judgment dismissing this case must be affirmed, and I join the court's opinion. Plaintiff Fritz is not entitled to relief under federal law. He has not sued any defendant who could possibly be held liable for damages, and the time for any injunctive relief in his case passed when Fritz's good name was cleared in 2013.

On the merits, I also agree that "our legal tradition is notice first, hearing later," ante at 3, but that is not the whole story here. There is another way to understand what happens with Wisconsin's system for publicizing an investigation of a licensed teacher for "immoral conduct." This alternate view can pose due process problems. Because a state-issued professional license is at stake, the familiar rule of *Paul v. Davis*, 424 U.S. 693 (1976), concerning defamation by state officials, does not necessarily control this situation.

In March 2012, Fritz resigned from his teaching job. He learned later that month, when he was turned down for a new job, that the state Department of Public Instruction had listed him as "under investigation." For the next 17 months, he was in legal limbo: he was practically un-hirable, yet he was unable to discover why he was under investigation, and had no idea when it might end. In July 2013, the department told him that it would not complete its investigation until at least 2014, two *years* after the report. Fritz hired a lawyer, who quickly requested a hearing (to which Fritz was not statutorily entitled). See Wis. Admin. Code § PI 34.102. The department, rather than convene a hearing, made a formal finding in less than three weeks that there was no probable cause to initiate license revocation proceedings, and it removed Fritz's "under investigation" designation. The combination of stigma and

delay poses serious due process questions even if Fritz himself is not entitled to relief under federal law. See *DuPuy v. Samuels*, 397 F.3d 493, 509 (7th Cir. 2005) (affirming injunction ordering 35-day deadline for resolving appeals of state's public designation of child-care workers as subject to "indicated" findings of child abuse).

Wisconsin's public designation of a teacher as "under investigation" for suspected "immoral conduct" can inflict a stigma that makes a teacher unemployable, as a matter of fact if not law, until the investigation is resolved. If that's correct, the teacher may well be entitled at least to notice of the charge being investigated and a name-clearing hearing—and within a reasonable time.

Wisconsin asserts here that it is "simply implausible that anyone could reasonably infer anything of substance" from the designation that a teacher is "under investigation." The state contends the category of "immoral conduct" is merely an "administrative label" "devoid of any stigmatizing substance." The state's assertion loses sight of the statutory details and of real life.

To explain, a school administrator must report a licensed teacher to Wisconsin's Department of Public Instruction, and the department must designate that teacher as "under investigation" on its public website, under four circumstances:

> (1) the teacher is *charged* with one of many serious crimes against children (e.g., sexual assault or child trafficking) under Wis. Stat. Ch. 948;

> (2) the teacher is *convicted* of such a crime or of fourth-degree sexual assault under Wis. Stat. § 940.225(3m);

>  (3) the teacher is *dismissed* (or his contract is not re-
>  newed) "based in whole or in part on evidence that the
>  person engaged in immoral conduct;" or
>
>  (4) the teacher *resigns* and the administrator has "a rea-
>  sonable suspicion that the resignation relates to the
>  person having engaged in immoral conduct."

See Wis. Stat. § 115.31(3)(a).

Plaintiff Fritz was not charged with or convicted of any such crimes. He resigned from his last teaching job. The only statutory basis for reporting and investigating him was his former employer's "reasonable suspicion" that his resignation related to his having engaged in "immoral conduct." Under the statute, "immoral conduct" includes a teacher's use of school computers for pornography, assisting child predators with obtaining school positions, or otherwise "endanger[ing] the health, safety, welfare, or education of any pupil" by violating "commonly accepted moral or ethical standards." § 115.31(1)(c)1.

The broad definition is nearly as broad as the allegations that Socrates was corrupting the youth of Athens. But given the statutory emphasis on possible sexual abuse of school children, the stigma of an investigation for someone in Fritz's shoes should be apparent. To use an example from the state's brief, what administrator in her right mind, in deciding to hire a new teacher, would cross her fingers and hope that a teacher under investigation might have only given a cigarette to a high-school student when it is possible he engaged in sexual activity with a child?

When a teacher comes under reasonable suspicion of abusing students, the state's interests are obvious and powerful. Everyone has an interest in resolving the situation accurately, fairly, and quickly. But that leads us to two problems under state law that surfaced in Fritz's case. State law requires that a report be made promptly, within just 15 days after an administrator learns of the basis for the report. Wis. Stat. § 115.31(5)(a). Once a teacher has been reported, however, the statutes impose no time limit on the department to determine whether probable cause supports the report and whether to initiate license revocation proceedings. § 115.31(6)(b). Also, when the department begins an investigation, it is supposed to "Notify the licensee that an investigation is proceeding, the specific allegations or complaint against the licensee, and [allow] the licensee [to] respond to the investigator regarding the complaint or allegation." Wis. Admin. Code § PI 34.100(1)(b). Fritz alleges here that he did not receive the required notice. As a result, Fritz was in limbo indefinitely and did not know why.

Wisconsin has the power to suspend a teacher's license, of course. That formal step would require due process, at least in the minimal form of notice and a timely and meaningful opportunity to be heard. See *DuPuy v. Samuels*, 397 F.3d at 503, 509 (affirming injunction requiring prompt hearings and decisions in appeals by child-care workers and foster parents listed publicly as accused of abusing children; disclosure by licensing agency of stigmatizing information that "effectively" bars individuals "from future employment" in chosen field "squarely implicate[s] a protected liberty interest" requiring due process); see also *Doyle v. Camelot Care Centers*, 305 F.3d 603, 617 (7th Cir. 2002) ("the 'alteration of a legal status,' such as a governmental right previously held, 'which,

combined with the injury resulting from the defamation, jus-tif[ies] the invocation of procedural safeguards'"), quoting *Paul*, 424 U.S. at 708–09. Publicly listing accused teachers as "under investigation" appears to be an easier and cheaper al-ternative to license suspension, but with similar practical con-sequences. It effectively suspends some teachers' careers, but without a prompt and fair opportunity to be heard and to clear their names. The reasoning of *DuPuy* may well apply to this system.

It is disingenuous for the state to contend here that an "un-der investigation" designation is *not* meant to affect a teacher's status. The department tells school administrators to use the designation when making hiring decisions. *Best Prac-tices for Misconduct Referrals under § 115:31*, 1–2 (Jan. 30, 2012), https://dpi.wi.gov/sites/default/files/imce/tepdl/Licens-ing/act84bestpractices2011.pdf (administrators should use department's "License Look Up" feature to determine "whether the applicant is currently the subject of a DPI inves-tigation"). The department assures administrators that its website "will indicate in red type at the top of the page if a person's license [is] under investigation." *Id*. at 2. The depart-ment further encourages administrators to cooperate in inves-tigations so as not to "allow[] potentially dangerous persons to remain in the classroom." *Id*. at 3.

Wisconsin undoubtedly has the power and duty to license teachers and so to act as the gatekeeper to state education em-ployment. With that power comes the responsibility to be fair to teachers, too, which includes complying with state law and resolving these cases promptly. If another teacher has an ex-perience under this system similar to Fritz's, it might add up to a federal due process violation, calling at least for timely

injunctive relief as in *DuPuy v. Samuels*. But complying with state law would go a long way toward avoiding such problems.